PULLMAN *vs.* CORNING and others.

Where the plaintiff contracted with the defendants to build for them a stone building in a good, skillful and workmanlike manner, at a specified sum per perch, of materials to be furnished by the defendants, which price the defendants agreed to pay on the completion of the work, and the plaintiff built the house in so unskillful, negligent, and unworkmanlike a manner that the walls were cracked, warped and unsafe, and could not be made good and safe walls without taking down and rebuilding two-fifths of the same; *Held,* that the plaintiff could not recover any compensation for the work done by him.

APPEAL, by the plaintiff, from a judgment rendered at special term. The facts are sufficiently stated in the opinion of the court.

*H. K. Jerome,* for the appellant.

*O. Hastings* and *M. S. Newton,* for the respondents.

*By the Court,* WELLES, J. The action was brought by Pullman, the appellant, to recover pay for doing the mason work in putting up the walls of a cobble-stone house for the respondents, upon their land in the town of Webster, Monroe county, at the price of fifty cents a perch, the respondent furnishing the materials, and claiming that the walls, when completed, measured 540 perches; also for extra work on the same building; and for damages in consequence of the respondents not being ready for the appellant to commence the work according to agreement. The answer denied any indebtedness of the respondents to the appellant; and set out a special parol agreement between the parties respecting the building the walls of the house in question, alledging that the appellant commenced the work, and went on and pretended to have completed it; but alledged that it was not done according to contract, but that it was done in an unskillful, unworkmanlike manner, specifying the defects particularly, and claiming that the work was worthless, and that their damage in consequence thereof was $305. The replication fortified the complaint, and alledged that whatever defects existed were attri-

Pullman *v.* Corning.

butable to the directions and conduct of the respondents, and the badness of the materials furnished.

The action was tried before referees, who, after hearing a large amount of evidence, made a report, in July, 1849, by which they found that the plaintiff, (the appellant,) in the spring of the year 1848, contracted with the defendants (the respondents) to build them the cobble-stone building, with walls of the dimensions mentioned in the answer, in a good, skillful and workmanlike manner, at and for the sum of fifty cents a perch, of materials to be furnished by the defendants, which price the defendants agreed to pay when the work should be completed in manner aforesaid.

The referees further found by their report, that the plaintiff constructed the walls of such building, of materials furnished by the defendants, by the 12th day of August, 1848; but that he constructed the same in so unskillful, negligent and unworkmanlike manner, that by reason thereof they were cracked, warped and unsafe, and could not be made good and safe walls, without taking down and rebuilding two-fifths of the same.

They also found that the defendants had not accepted the work, nor waived a faithful, skillful and workmanlike performance thereof. That the other material allegations in the pleadings they did not find proved; and they therefore found that the defendants were not indebted to the plaintiff for the work.

By a supplemental report, made in pursuance of an order of the court, the referees reported that the ground upon which they found that the plaintiff was not entitled to recover, was, that while they found that two-fifths of the wall built would require to be taken down and relaid, they did not regard the plaintiff's job complete, and found that it was not so. Also that they found the value of the good wall, exclusive of materials, to be $161,60, and the expense of taking down the bad wall to be $57, and the value of the good wall after deducting the latter sum to be $104,60; to this they added $4,50 for extra work, making $109. That this last sum was the value of the plaintiff's services to the defendants, unless they might have sustained damages by loss of the use of the building.

Judgment was entered in favor of the defendants, at a special term, from which the plaintiff appealed.

It is admitted by the appellant's counsel to be a general rule, that in actions for work, labor and services, where performance of the work to be done is the consideration of the promise to pay for it the stipulated price, a substantial performance is a condition precedent to the right to recover. But it is claimed that this rule has its exceptions, and that in cases of building contracts, especially on the land of the party for whom the building is constructed, where the work is fully done but not in the manner stipulated in the contract, yet if done in good faith and it is of any value to the party, he is answerable for the amount of such value, deducting what it would cost to make the work as good as the contract required. This is a question of a good deal of practical importance, and has been the subject of much discussion and some conflict of decision in the courts of England and this country. As remarked by Bronson, justice, in *Mead* v. *Degolyer*, (16 *Wend.* 632,) "Some confusion has crept into the cases, for the want of proper care in distinguishing between the right and the remedy; or in other words, between the cause of action and the mode of enforcing it. These are distinct considerations, and yet the language of judges, in relation to one branch of the subject, has frequently been quoted as an authority in relation to the other. Where there is no dispute about the right of action, there may be still a question about the form of the remedy." Many cases are reported where the plaintiff has not been allowed to recover when it appeared he had a good cause of action, on the ground that his declaration was not adapted to his case as disclosed by the evidence; as for instance, where he had declared upon a special agreement to perform a particular service, or do a particular job of work in a specified manner and within a certain time, for a compensation agreed upon, averring performance on his part, and the evidence showed only a part performance and a legal excuse for not performing the residue, or a full performance but not by the time or in the manner which the contract required, but there had been a waiver of strict performance or an acceptance by the other party, or an

express or an implied agreement extending the time or changing the manner of performance. In all of these cases the plaintiff would be entitled to recover for his services on the common counts for work and labor, but not under a special count upon the contract.

In this case, however, there is no question made in relation to the form of stating the cause of action in the complaint. It is simply a question of the appellant's right to recover, upon the facts found by the referees.

There is a class of cases, in which a recovery may be had, where the plaintiff has contracted to build or do some other work for another, and the work, though actually performed, has not been done within the stipulated time, or there has been some other departure from the terms of the contract. Of this character doubtless was *Keck's case*, cited in *Buller's N. P.* 139. The passage in Buller is as follows : " But if he [the plaintiff] prove a special agreement, and the work done, but not pursuant to the agreement, he shall recover upon the *quantum meruit*, for otherwise he would not be able to recover at all ; as if in a *quantum meruit* for work and labor, the plaintiff proved he had built a house for the defendant, though the defendant should afterwards prove that there was a special agreement about the building of it, viz. that it should be built at such a time and in such a manner, and the plaintiff had not performed the agreement, yet the plaintiff would recover upon the *quantum meruit*, though doubtless such proof on the part of the defendant might be proper to lessen the quantum of damages." The same doctrine was held in *Linningdale* v. *Livingston*, (10 *John.* 36,) and was recognized as good law in *Jennings* v. *Camp*, (13 *Id.* 94.) In the last case, Spencer, justice, who delivered the opinion of the court, explains the doctrine in Buller as follows : "It supposes a performance of the contract with variations from the agreement, probably with the assent of both parties ; or it may mean an extension of the time within which the agreement was to be performed, with the like assent." The rule in Buller is also cited with approbation by the court and followed, in the case of *Jewell* v. *Schroeppel*, (4 *Cowen*, 564.) In that case, Sutherland,

justice, who delivered the opinion of the court, says : " I consider it well settled, that if there be a special agreement to do a piece of work, and the work be done, but not pursuant to such agreement, either in point of time or in any other respect, the party can recover upon the common counts." I would add to Justice Sutherland's rule the same explanation that Spencer, justice, did to the rule in Buller. Many, if not the most of the cases on this point, turn upon the question of the adaptation of the declaration to the case as proved. And when that is the only question, the rule in respect to the right of action is sometimes found to be stated without sufficient care and caution. In the case put by Justice Sutherland, he uses the expression " either in point of time, *or in any other respect.*" He certainly does not mean to be understood in the absolute unlimited sense which his words import. I have met with no case which I am willing to follow as authority, falling within this class, where the plaintiff was allowed to recover, unless there had been a waiver of strict performance, or an acceptance by the party for whom the work was done, or something equivalent to a waiver or acceptance; and it seems to me, to allow a recovery on any other ground would be substituting sympathy or caprice for the principles of law.

Looking at the present case in view of the foregoing rule, with the qualifications and limitations mentioned, it seems to me the appellant cannot recover in this action upon the facts reported by the referees. According to that report he constructed the walls of the building in question in so unskillful, negligent and unworkmanlike a manner as that by reason thereof they are cracked, warped and unsafe, and cannot be made good and safe walls without taking down and rebuilding two-fifths of the same. It also states that the respondents have not accepted the work, nor waived a faithful, skillful and workmanlike performance thereof. I confess I can see no ground upon which a recovery can be had, either on principles of law or common justice ; or why the respondents, upon the nicest rules of ethics or science of casuistry, should be called upon to pay for work thus done. In judgment of law, it was a part of the appellant's un-

dertaking that he possessed the requisite skill and knowledge to perform the work in a skillful and workmanlike manner. If the failure was in consequence of his ignorance, he clearly is not entitled to pay, and a fortiori, if it happened through his negligence. Most emphatically then, he cannot recover where, as the report shows, the failure was the consequence of both causes combined.

There is, I am forced to admit, some authority in the books for saying that even in a case of the kind, where the work, although improperly or unskillfully done, is still of some use, benefit and value to the employer, the workman will be entitled to so much as the work is reasonably worth to the employer, under all the circumstances, making the employer all due and reasonable allowances. It seems to me that such a rule is without a basis to rest upon, and would be much more fitting a court of conciliation, than of law. When understood with the qualifications and limitations I have mentioned, it will answer; but without them, I am not willing to follow it. If a man contract to deliver a thousand bushels of wheat by a particular day, and delivers only nine hundred bushels by the day, and refuses or neglects to deliver the remainder, he cannot recover for that delivered. The case of *Oxendale* v. *Wetherell*, (9 *Barn. & Cress*, 386,) holding a different rule, was disapproved by this court in *Champlin* v. *Rowley*, (13 *Wend.* 258,) and by the court for the correction of errors, *S. C. in error*, (18 *Id.* 187.)

If in the case supposed, of a part performance of a contract to deliver, the party is not entitled to recover for the wheat actually delivered, or the party receiving it not bound to make compensation to the extent of the benefit he has derived from such part performance, upon what principle of law, equity or morality, shall the appellant be entitled to recover in the present case? Does the fact that he has completed the work in the manner stated in the report make any difference? If it does, I confess I am utterly unable to perceive any good reason why. If the walls of the building in question had been carried up to the upper plates, and all completed excepting the gable ends, and done in the best possible manner so far, and then abandoned by

the appellant without the consent of the respondents, no one would contend that he would be entitled to recover any thing, although the work might be completed at an expense of $5 to the respondents. According to some adjudged cases, not however in this state, the appellant would be entitled to recover in the case supposed, upon the principle that it is unconscientious and inequitable for a party who has been actually benefited by the part performance of a contract, above or beyond the damages he has sustained by the non-performance of the residue, to retain this excess of benefit without making the other party a compensation therefor ; and that this excess of benefit arising from the part performance of the other party, forms a new consideration, upon which the law implies a promise to pay, and which excess of benefit therefore may be recovered in the equitable action of assumpsit. It seems to me that by adopting such reasoning, courts of law get out of their appropriate sphere and assume the province of making law for parties.

It is to be remarked in this case that the appellant furnished none of the materials for the building. All that he had contributed was in his labor, and the referees have found that to have been unskillfully and negligently performed. And although it is shown by a supplemental report, that the value of the labor, after deducting the expense of making it good, would be $109, yet it does not appear that the appellant has offered to take down the bad wall and rebuild it, or that the respondents have ever as yet been able to make any use whatever of the building, or that they ever will

The case of *Hayward* v. *Leonard*, (7 *Pick.* 181,) was in many respects like the present in its circumstances. The plaintiff was allowed to recover, on the ground that the defendant waived all exceptions to the manner in which the work was done. In the case of *Smith* v. *The Cong. Meeting House in Lowell*, (8 *Pick.* 178,) the defendants had gone into the occupancy of the house, and although it was not built according to contract, the plaintiff was allowed to recover what the defendants had been benefited by the work done, and materials furnished by the plaintiffs. The case states that the defendants had occupied the house as a

place of worship, but without prejudice to their rights.  In my judgment the decision cannot be upheld upon any known principle, unless there was an acceptance or waiver of strict performance.  If it intended to go farther, I must respectively dissent from it.

I have examined all of the numerous cases referred to by the appellant's counsel, to which I have been able to have access, and am satisfied that whatever the language of some of them may seem to convey, the true rule is as I have stated.  I can see no just ground for making a distinction between a building contract and any other.  Hard cases sometimes arise.  The case of *Champlin* v. *Rowley*, (15 *Wend.* 258,) was a hard case, and there have been many such; but courts have no right to make contracts for parties, nor do they possess the power of dispensing with any rule of law.

It is urged by the appellant's counsel that the report is in several respects contrary to the evidence.

Without going into a discussion of the evidence, in this place, it is sufficient to say, that I have read it carefully through and cannot see that there is such a decided preponderance in favor of the appellant on any of the points to which the report relates, as to justify the court in disturbing the finding of the referees. I am by no means prepared to say that I should have come to the same conclusions of fact upon some of the material questions in the case; still, in a case of this kind, it is not in the province of the court to decide questions of that character.  The referees stand in the place of a jury; and as I understand the rule, their finding is not to be interfered with, unless it is so palpably erroneous as to awaken suspicion that they have been influenced by partiality or some other improper motive.

The objections to the admissibility of evidence, as urged upon the argument, I do not think are well taken.  In the course of the trial, one Rich, a witness produced by the defendants, testified that he was not a mason.  The defendants then proposed to prove by him, that the house in question was not built as well as a certain other house in the neighborhood; this was objected to on the ground that the witness was not an expert.

The evidence, I think, was competent. How much it was worth, was another question. A similar objection was made to evidence given by the witness Town, which I think was properly disposed of.

Upon the whole, I think the judgment at special term should be affirmed.

[MONROE GENERAL TERM, June 3, 1851. *Welles, Selden* and *Johnson,* Justices.]