NEW YORK,
May, 1837.

Mead
v.
Degolyer.

## MEAD vs. DEGOLYER.

Where a contract for the sale and delivery of personal property specifies the·
*quantity*, *price* and *time of performance*, the vendor is not entitled to recover
under a *quantum meruit* for a *portion less than the whole quantity* agreed to·
be delivered, notwithstanding that the vendee has consented to a variation
of the contract as to *price*, and *time of performance*.

The plaintiff in such case cannot avail himself of an account, stated by the·
vendee, crediting the vendor with the quantity delivered at the stipulated
price, and debiting him with a certain sum *as damages sustained* by the fail-·
ure of an entire performance, where he refused to settle with the vendee
on the basis of such account stated.*

ERROR from. the Albany mayor's court. Degolyer sued
Mead in the mayor's court, declared against him in assump-
sit for goods sold and delivered, and proved the delivery of

---

---

* Justice *Cowen*, who delivered a dissenting opinion, as will be seen at the
close of this case, held, that under the circumstances, the parties should be
considered as having *wholly departed* from the original contract, and that
consequently the vendor ·was entitled to recover under a *quantum meruit*.
He also held that the account stated was available to the vendor as far forth
as it contained *admissions of facts*, without subjecting him to the charges
made by the other party, as *damages sustained by non-performance ;* and in
discussing this question, refers to numerous cases, on the subject of admissions
made in treaties for *compromise*.

105,768 feet of sawed timber, and the admission of the defendant, that he had agreed to pay for it, $11 per 1000 feet. It appeared in the course of the trial, that on the 12th January, 1832, a written contract *under seal* was entered into between the parties, whereby Degolyer agreed to deliver to Mead a quantity of sawed timber, particularly described in a schedule attached to the contract, amounting to 129,431 *feet, on or before the* 1st July next, after the date of the contract; for which Mead agreed to pay $9,75 per 1000 feet, board measure; one half thereof, on the delivery of each load, and the *residue on the delivery of the whole quantity.* Before any portion of the timber was delivered, the plaintiff *refused* to perform at the price stipulated, and the defendant thereupon agreed to allow him $11 per 1000 feet, *if he would deliver the timber.* From the evidence adduced, it was manifest that the quantity of timber delivered up to, and including the 1st July, did not exceed 52,000 feet. Up to that day, the defendant had received $285,80, the payment of which sum be acknowledged by *receipts endorsed on the back of the contract.* On the 5th July, there was another receipt endorsed on the contract for the sum of $366,25. Various other receipts for moneys paid by the defendant to the plaintiff were also produced, several of which referred to the contract, and others were generally on account of timber, all subsequent to the 1st July—the last of any amount bearing date 23d August. A witness called by the plaintiff testified, that in the autumn of 1832, he was directed by the defendant to state an account between him and the defendant, which he accordingly did, crediting the plaintiff the quantity of timber delivered at the price of $11 per 1000 feet, and debiting him with the payments made, charging him with the difference between $11 and $14 per 1000 feet for the quantity of timber not delivered, and which ought to have been delivered according to the contract; and with a sum of $15 demanded by the defendant for a journey performed by him to urge a performance of the contract. He struck a balance and found the sum of $74 due to the plaintiff, which the defendant offered to pay to the plaintiff, who refused to receive it, alleging

VOL. XVI. 80

that the defendant had no right to make the charges against him for not delivering the timber, and for the journey perform-ed. The witness further testified, that at the time he was directed to state the account, the defendant told him that he had agreed to allow the plaintiff $11 per 1000 feet, *if he would deliver all the timber originally contracted for ;* and he further stated, that the account was made for the purpose of effect-ing a settlement; but as the parties could not agree, nothing was finally done. The recorder having refused to non-suit the plaintiff, charged the jury, that although the plaintiff had failed fully to perform the contract on his part, still as a . matter of law, he was entitled to recover to the extent to which the defendant had been actually benefitted, after mak-ing a proper deduction for the non-performance of the con-tract. The jury found a verdict for the plaintiff with $88,43 damages, for which judgment was rendered. The defendant having excepted to the decision and charge of the recorder, sued out a writ of error.

*P. Gansevoort,* for the plaintiff in error.

*R. B. Bates,* for the defendant in error.

*By the Court,* BRONSON, J. The offer made by the defen-dant below for the purpose of effecting a settlement, was re-jected by the plaintiff, and must therefore be laid out of the case.

The change which the defendant consented to make in the price to be paid for the timber, only modified the written con-tract in that particular. In all other respects the agreement, and the rights of the parties under it, remained unaltered. The delivery of the whole quantity of timber, and by the specified time, continued, as they were before, to be conditions precedent to the plaintiff's right to the price; except as to that portion which was payable on the delivery of each load, and that has been paid.

The contract afterwards underwent a further modifica-tion, by enlarging the time for the delivery of the timber. Although there was no express stipulation to that effect,

such an agreement may be implied from what took place after the first day of July—the time when the contract should have been fully executed on the part of the plaintiff. He continued to deliver timber after the day had passed, which the defendant received without objection. Payments were made and received on the contract. Both parties, therefore, may be regarded as having tacitly assented to an extension of the time for performance on the part of the plaintiff. If when the day arrived the defendant intended to insist on the default, and not allow the plaintiff to proceed to a completion of the delivery, he should have spoken at that time. *Jewell* v. *Schroeppel*, 4 Cowen, 564. The plaintiff on his part had no choice but to go on with the contract, or forfeit what he had done under it. Neither party can now set up that the contract was wholly rescinded by what took place after the first of July. The quantity and description of timber to be delivered, and the price to be paid—subject to all just allowances to the defendant for the default—remained untouched. Whatever foundation there might be for the defendant to insist that the contract was at an end, there was surely no ground for any such argument on the part of the plaintiff. All the wrong had been on his part. He refused in the first place to proceed with the contract without a large advance in price; and then made default in point of time. The most that he can ask is, that the original contract shall be deemed to have been modified in these two particulars—not wholly abandoned. To go further would be the height of injustice. Indeed the court below did not put the case upon the ground that the contract had been rescinded, nor did the counsel for the plaintiff assume that position on the argument in this court.

What then is this case? The plaintiff agreed to deliver a large quantity of timber; for which he was to be paid—except the part which he has already received—when the whole quantity should be delivered. He furnished a part of the timber, and then, without any excuse or apology whatever, stopped short; and now claims to recover for the timber actually delivered. The mere statement of the

case furnishes a complete answer to the action. Courts have no dispensing power to absolve men from their legal engagements, nor can they make contracts for them. The delivery of the timber was a condition precedent to the payment of the price ; and the plaintiff must first perform on his part before he has any ground of complaint against the defendant. This court has never held any other doctrine. I shall not go through with the cases—it will be enough to refer to a few of them. *M'Millan* v. *Vanderlip*, 12 Johns. Rep. 165. *Jennings* v. *Camp*, 13 id. 94. *Ketcham* v. *Evertson*, id. 359. *Wood* v. *Edwards*, 19 id. 205. *Champlin* v. *Rowley*, 13 Wendell, 258. *Sickles* v. *Pattison*, 14 id. 257.

The cases cited by the plaintiff's counsel will not aid him. In *Linningdale* v. *Livingston*, 10 Johns. R. 36, the contract had been partially performed by the plaintiff in proper time, and after the day *he offered to complete the work, but was prevented by the defendant*. The court said that this put an end to the special contract, and the plaintiff might recover for the logs which had been delivered, under the general counts. In the case under consideration, the plaintiff has never offered to complete the performance of his contract, nor has he been prevented from doing so by any act of the defendant. *Raymond* v. *Bearnard*, 12 Johns. Rep. 274, turned on the same distinction. *The plaintiff offered to go on with the contract, but the defendant refused*, on the ground that the plaintiff was in default. The court held that there was no longer any subsisting special agreement between the parties, and the plaintiff might recover back the money paid, under the common counts. In *Dubois* v. *The D. & H. Canal Co.*, 4 Wendell, 285, the plaintiff had been prevented from performing the work in time *by the act of the defendants*, and it *had, in fact, been performed*, though after the day. It was also said that the special contract had been rescinded by the acts of the defendants. But in this case, the plaintiff has neither performed on his part, nor is there any pretence that the defendant has done any act to put an end to the special agreement. The remarks of Sir James Mansfield, C. J., in

*Cooke* v. *Munstone*, 4 B. & P. 351, have been cited and misapplied a hundred times. The decision itself proves nothing in favor of this action. The plaintiff had paid £2, 5s., as earnest money on a contract by which the defendant was to deliver 35 chaldrons of *soil*, and the defendant had wrongfully refused to deliver it. The plaintiff declared on the special agreement, and added the money counts. Although he clearly had a right of action, the court held that he could not recover on the special count, because there was a variance between it and the special agreement; and that he could not recover back the money paid under the general counts, because the special agreement was still in force. With great respect, I think the last branch of the decision was not well founded. The defendant, by his own wrongful act, had put it in the power of the plaintiff to sue for a breach of the special agreement, or to waive that right, and recover back the money paid. It did not lie with the defendant to object that the special contract was still in force after he had refused to perform it. It is, however, unnecessary to decide any thing on that point. It is enough that the case cannot aid the plaintiff. The only case which favors this action is *Oxendale* v. *Wetherell*, 9 B. & C. 401, and it has already been held that this decision is not in accordance with the rule as settled in this state. *Champlin* v. *Rowley*, 13 Wendell, 258.

Some confusion has crept into the cases for the want of proper care in distinguishing between the right and the reme-dy—or in other words, between the cause of action and the mode of enforcing it. These are distinct considerations, and yet the language of judges, in relation to one branch of the subject, has frequently been quoted as an authority concerning the other. Where there is no dispute about the right of action, there may still be a question about the form of the remedy. One general rule in relation to special agreements for the performance of labor, delivery of materials, or the like, is, that so long as the contract continues *executory*, the plaintiff must declare specially; but when it has been *executed*, he may declare generally—using only the appropriate common counts. This he may do although the

special agreement was in writing. When the plaintiff has *performed* on his part, the law raises a duty on the part of the defendant to pay the stipulated price ; and the plaintiff may count either on this implied assumpsit, or on the original executory agreement. If, however, time was to be given the defendant for payment, the general *indebitatus* count will not answer until the credit has expired ; and there may be cases where the *mode* of payment is such that the common counts will not answer, although the plaintiff has performed on his part. Many of the rules on this subject are well stated in Lawes on Plead. in Assump. 4 to 8. Where the case is such that the plaintiff might recover on the general count, it will be no objection that the declaration also contains a count on a special agreement; and if the plaintiff attempt to prove the special agreement, and fail to do so, it will not prejudice his right to recover under the general counts. *Payne* v. *Bacomb,* Dougl. 651. *Tuttle* v. *Mayo,* 7 Johns. R. 132. *Robertson* v. *Lynch,* 18 id. 351. These are all cases where the plaintiff has *performed* the agreement on his part. There is another class of cases, where there has been a *part performance* of a special contract, which is then *abandoned* by the mutual consent of the parties, or is *rescinded* by some wrong act on the part of the defendant. In such cases the plaintiff may resort to the appropriate common counts, and recover for his labor, materials, goods furnished, or money paid under the special agreement. But where the special contract is still subsisting, and no act has been done by one party which will authorize the other to consider it rescinded, the plaintiff cannot resort to the common counts. *Clark* v. *Smith,* 14 Johns. R. 326. There is a third class of cases, where the plaintiff may resort to the common counts, notwithstanding the work was done under a special agreement ; as where the plaintiff contracts to build or do some other work for another, and the work, though *actually performed,* has not been done within the stipulated time, or there has been some other departure from the terms of the contract. In such cases, although the plaintiff cannot recover on the contract, he may sometimes count on a *quantum meruit,* and recover the value

of the work and materials delivered to the defendant. *Jen-* NEW-YORK, *nings* v. *Camp.* 13 Johns. R. 94. *Jewell* v. *Schroeppel*, 4 May, 1837. Cowen, 264. 2 Stark. Ev. 97, 8. Bull. N. P. 139. Keck's case, which is there cited, falls within this class of cases, and within the rule as laid down by Buller. The work *had been done*, the plaintiff *had built* the house, though not *at the time* and in the particular *manner* specified in the contract.

Mead
v.
Degolyer.

Whether we regard this as a question of pleading or one of principle, there is no foundation for the present action. In all the cases where the plaintiff has been allowed to recover on the general counts for labor performed or materials furnished under a special contract, the work had either been actually *executed*, though with variation as to time or manner, or the special agreement had been *rescinded*—it was no longer in force. As a question of principle, it is impossible to uphold the action. The defendant has not only fully performed the agreement on his part, but he has done much more than could have been required of him. He has consented to an advance in price, and enlarged the time for the delivery of the timber. Neither before nor since the plaintiff's default has he either done or said any thing to prevent the plaintiff from completing the execution of the contract. We have then the naked case of a man violating his own contract without cause, and then attempting to maintain an action against the injured party. To allow the experiment to succeed, would be both contrary to law and against good morals.

The following *dissenting opinion* was delivered :

By COWEN, J. It is clear the plaintiff below would have had no right to recover without strict performance, unless there had been a departure from the contract by mutual consent, express or implied. 13 Wendell, 258. The fact is clear, however, that the contract was departed from by mutual agreement ; and yet the defendant below contends that he is entirely absolved from payment. He waived the time, he waived the price, he paid the money after the time, and finally sent in his account with the balance, after charging

damages for non-performance; and it is upon his own *data* that the recorder directed a recovery. Virtually, the defendant said, " I will no longer hold you strictly to price or time ;" and after a partial delivery and partial payment, by making out his account, he says with equal plainness, " I waive a full performance." If he did not mean to pay for what was delivered, he should have taken his ground in the first instance. He might have sued the plaintiff for non-performance ; but he leads him on under a new arrangement, by which he gets a good portion of the timber. He might perhaps have stopped when time was departed from. Receiving the timber afterwards, he was bound either to return it or pay for it.

The late case of *Champlin* v. *Rowley*, 13 Wendell, 258, certainly goes far enough for all necessary purposes of protection to vendees. That allows a man, where only part of the goods are delivered pursuant to the contract, that being entire, to retain whatever shall have come to his hands without paying any thing. Former cases had repeatedly gone as far in respect to labor, and several English cases, even where materials had been found and applied to improvements on real estate. In the two latter cases, all return in kind would be impracticable. But wherever it was otherwise, as in the case of a vendee of portable articles, he was bound to return them, or else pay on a *quantum valebant*, though the vendor failed to perform. *Oxendale* v. *Wetherell*, 9 Barn. & Cress. 386. This case, however, stands expressly overruled in *Champlin* v. *Rowley*, and it strikes me very properly. The case at bar might have afforded, in its original shape, an illustration of its soundness. The vendee is in the course of receiving vendible articles in the line of his trade. He is certainly not bound to keep them on hand, to ascertain whether the vendor will deal honestly or falsely with him. He might have said to the plaintiff, " Fulfil your contract as it stood, or I will pay you nothing." That, we have seen, he did not do ; and no case, in this or any other court, has gone' so far, as to require the plaintiff to do what the defendant has himself waived. On the contrary, there are a multi-

tude of decisions in this court, both in respect to special
contracts sealed and simple, making the deviation by mu-
tual consent the foundation of an action of general *inde-*
*bitatus assumpsit.* Where a party will direct the vendor
to go on, still receiving the goods after the time, or without

regard to the quatity, quality, or price originally stipulated,
such circumstance forms a new contract implied by the
law, from the equity of the case. This is not doing so much
as a court of equity does every day, in respect to bargains
concerning real estate. The court disregards time and all
other circumstances of inconsiderable moment, in favor of
a party who has even of his own head departed from the
terms of the condition. It does so by substituting a com-
pensation for strict fulfilment. It was the extreme rigor of
a court of law, which drove chancery to the supposed ne-
cessity of relief against various forfeitures and penalties
arising from want of strict punctuality. The courts of law
could not relieve in respect to lands, whether the departure
from the contract were with or without mutual consent,
because of the statute of frauds. Every thing out of the
writing was void, as resting in parol. Of course such matters
fell to the court of chancery. But the courts of law stood
clear of the statute in respect to goods and chattels; and
the English courts thought they were authorized, in all
cases of delivery of goods, to depart from the exact terms
of the contract in case of a part performance. They did
something like what chancery does of real estate; allowed
pay for the goods delivered and retained, *deducting the dam-
ages for the want entire performance.* This was equalizing
the rights of the parties on equitable principles. It was taking
what they considered the substance of the contract, instead
of its form. It was doing the same that all courts of law
now do in suits on penal bonds. Some courts of law have
deemed it their duty, within these principles, to make an
apportionment in all cases whether of labor or goods sold,
or materials found, allowing a compensation for benefit
received, though the laborer or vendor may have wilfully
disregarded the special contract. *Britton v. Turner,* 6 N.

Hamp. R. 481, and the cases there cited. *Wadleigh* v. *Sutton*, id. 15. We have adhered with greater exactness to the condition, though this court certainly felt itself staggered as to mere time, in *Raymond* v. *Bearnard*, 12 Johns. R. 274. We impose the penalty in order to enforce the exercise of good faith. We hold what was so repulsive to Lord Tenterden's ideas of justice, in *Oxendale* v. *Wetherell*, that, if a man agree to deliver 250 bushels of wheat by a certain day, and fall short but one bushel, the vendee gets the 249 for nothing. Such is undoubtedly the spirit of our cases, as was shown conclusively by Mr. Justice Nelson, in *Champlin* v. *Rowley*. This stern ground was first taken by Mr. Justice Spencer, in *M'Millan* v. *Vanderlip*, 12 Johns. R. 16. in commenting on *Waddington* v. *Oliver*, 5 B. & P. 61. Whether a court of chancery may not finally feel itself driven to interfere in some of these apparently hard cases, we need not inquire, nor with how much propriety. Mansfield, C. J. in *Wilde* v. *Fort*, 4 Taunt. 341, complained that the indulgence allowed by that court in respect to real contracts had resulted in dreadful laxity among the parties; while on the other hand, *Britton* v. *Turner*, deemed our rule enforcing personal contracts so very severe as to disregard it even in respect to contracts for hiring by the year. *Wadleigh* v. *Sutton* is to the same point. And see *Bream* v. *Marsh*, 4 Leigh, 21. All I mean to contend for is, that neither policy or authority will warrant us in going farther then we have done. As to authority, there are several cases from *Jewell* v. *Schroeppel*, 4 Cowen, 564, to *Dubois* v. *The Delaware & Hudson Canal Company*, 4 Wendell, 285, inclusive, which, as I understand them, will sustain the judgment now in question.

In the case at bar, we not only have an abundance in the acts of the parties pending the contract, from which to imply that they had changed it; but, as I said before, the defendant himself finally made out an account current, presenting those very principles of equitable adjustment on which the court below proceeded. It does not detract materially from the force of this evidence that the defendant intended it as a measure of com-

promise, and told the witness that the agreement was conditional. The evidence was competent. We know what the agreement was; and items are always evidence, even though the account be made out with the express view to settle a controversy. That kind of evidence is never withheld as an effort to buy peace, unless it relate to the offer of a round sum avowedly or impliedly for the sake of peace. All this I take to be well settled. It is obvious, in the first place, that the cautionary declaration, insisting on former conditions, can have no controlling effect within the rule that a declaration shall be taken together. That part of a conversation which goes in favor of a party is received only as explanatory of the act, or the part of the confession which makes against him, and a jury are never bound to believe the exculpatory portion in the face of other circumstances; they may reject it, and rely on that alone which inculpates. *Ives* v. *Bartholomew*, 9 Conn. R. 309. *Washington Bank* v. *Barrington*, 2 Penn. Rep. 27. *Newman* v. *Bradley*, 1 Dall. 240. *Quick* v. *Johnson*, 6 Mart. Lou. R. (N. S.) 532, 3. *Respublica* v. *M'Carty*, 2 Dall. 86. *Rex* v. *Clewes*, 4 Carr. & Payne, 221. *Rex* v. *Steptoe*, 4 id. 397. One word more in regard to the account being a communication, with a view to compromise. Almost every old account drawn from a book partakes of the same intent; but it is not the less evidence for that reason. I know some cases have gone very far to shut out every thing connected with a proposition to compromise. Such was the case of *Williams* v. *Thorp*, 8 Cowen, 201, and one of the nisi prius cases upon which it proceeded. These cases must certainly be taken with great qualifications. The general rule as settled by our highest judicial authority is, that the admission of any fact in the course of a treaty for compromise is competent and credible. In *Murray* v. *Coster*, 20 Johns. Rep. 576, a bill was filed to recover a share in the proceeds of goods. The defendants answered that they had, in order to avoid litigation, offered to pay their share without interest, but reserved the right to plead the statute of limitations if the offer was refused. This was holden to be an admission of the

NEW-YORK, fact of indebtedness, and as such, available against them;
May, 1837. yet the admission was made pending the suit, and in the
~~~~~~ course of an attempt to compromise. The admission was
Mead treated as so full and distinct that it removed the bar of the
v. statute of limitations. So where a defendant requested a
Degolyer. witness to go and compromise an action for a breach of
marriage promise, which he told the witness he had made.
Thompson, Ch. J. received the evidence, and remarked that
there was the admission of a fact, independent of the compro-
mise. *Mount v. Bogert*, Anth. N. P. R. 190. An *admission
of a fact*, according to almost all the English cases, though
made in the course of a treaty of compromise, is evidence
against the party. It is the mere proposition not accepted,
*to do an act* by way of settlement, which is excluded. Such
is the distinction laid down in the English books of evidence
without exception, and such is a fair deduction from the
English cases. The proposition usually put as an instance is
an offer to pay a round sum in the negotiation of compro-
mise ; but if the subject of dispute be a bill of exchange for
example, and the party admit his acceptance, though in the
course of the same treaty, that is evidence. 1 Phillip's Ev.
108, 9, 7th ed. 3 Esp. N. P. Cas. 113. The same distinc-
tion was expressly held in *Hyde v. Stone*, 7 Wendell, 354.
The distinction put by Hosmer, Ch. J. in *Hartford Bridge
Co. v. Granger*, 4 Connecticut Reports p. 142, is between an
offer as of £10 to settle, and the admission of an item in an
account. The case itself was an admission that the bridge
was not well made, and it was received, though made in the
course of a fruitless attempt to compromise. The same dis-
tinction is well illustrated in *Marsh v. Gold*, 2 Pick. 285, 290.
In *Delogny v. Rentowl*, 2 Mart. Lou. R. 175, the rule was put
by Livingston, counsel, and adopted by the court in these
words : " *Proposals* made while a compromise is on the car-
pet, do not bind ; but *conversations in which a fact is disclos-
ed*, may be admitted to prove it." Attempting to compromise
a *crim. con. suit*, the defendant admitted to the plaintiff that
he had been guilty, and offered to take and bring up one of
the plaintiff's children : held admissible. *Sanborn v. Neilson*,

4 N. Hamp. R. 501, 508, 9. The books are full of the like cases. See *Hamblett* v. *Hamblett*, 6 id. 333, 342, 343, and the cases cited at the last page.

In the case before us, the account was drawn out, as we have seen, crediting all the timber delivered and received, not at prices under the first contract, but the new one. In truth, the account is a solemn and deliberate admission of every thing on the credit side. The only qualification is a debit for damages which were unliquidated, and therefore open to negotiation. The paper was in other respects equivalent to a balance struck on the part of the defendant. It was saying, " I owe the plaintiff for so much lumber at such a price," and the admission stood fortified by the whole course of the transaction.

My opinion is, that the judgment below should be affirmed.

The CHIEF JUSTICE, however, concurring in the opinion delivered by Mr. Justice *Bronson*, that the judgment of the mayor's court ought to be reversed, it was accordingly reversed, and a *venire de novo* awarded.