## MORGAN vs. BUTTERFIELD.

*An agreement not to sue for a right resting in contract, when between all the parties to the contract, is not a distinct and independent undertaking upon which an action is maintainable, but a modification or extinguishment, according as it is temporary or perpetual, of the rights and obligations of the contract, and as such is available in defence to an action founded upon it.*

*A creditor stipulated with his debtor, in consideration of the assignment by the latter as collateral security, of a policy of insurance, on which there was a claim for a loss, that he would not prosecute his debt until he had used all legal means to collect the money claimed on the policy; but without taking any steps to collect the policy, prosecuted his claim against the debtor; held, that the agreement not to prosecute was pleadable in bar, and a good defence to the action.*

Error to Oakland Circuit.

This was an action of assumpsit brought by Morgan, the payee, against Butterfield, as the maker of two promissory

notes, to the amount of $968 19, dated in 1846, and each payable four months from date.

The defendant pleaded in abatement, that in 1848, by a certain article of agreement in writing, the plaintiff, in consideration that the defendant would assign to him as collateral security to said notes, a certain policy of insurance on which the defendant claimed that he had sustained a loss of $1,300, agreed that he would not prosecute the notes until he had used all legal means to collect the money due on the policy; that the defendant in consideration thereof, assigned the policy to the plaintiff, and that the plaintiff had taken no legal means whatever to collect the money due on the policy.

To this plea there was a demurrer and joinder therein. On argument the Court below overruled the demurrer, and gave judgment accordingly. The plaintiff thereupon removed the cause into this Court by writ of error.

*R. Manning*, for plaintiff in error.

*Crofoot & Parrish*, for defendant in error, relied upon Robinson *vs.* Godfrey, 2 Mich. R. 408.

By the Court, DOUGLASS, J.

It has been repeatedly held that a covenant not to sue for a limited time for a right resting in contract, (and of course a covenant not to sue until certain acts done rests upon the principle,) is no defence to an action brought before the time expires, but merely gives a claim for damages in case of its breach. (*Deux* vs. *Jeffries, Cro. Eliz.* 352; *Aloff* vs. *Scrimshaw*, 2 *Salk.* 573; *S. C. Carth.* 63; *Thumbleby* vs. *Barron*, 3 *M. & W.* 210; *Ford* vs. *Beech*, 11 *Ad. & Ell. N. S.* 852; *Chandler* vs. *Herrick*, 19 *J. R.* 129; *Winans* vs. *Huston*, 6 *Wend.* 471 ; *Perkins* vs. *Gilman*, 8 *Pick.*, 229 ; *Fullam* vs. *Valentine*, 11 *Ib.* 156; *Foster* vs. *Purdy*, 5 *Metc.* 442; *Mendenhall* vs. *Lenwell*, 5 *Blackf.* 125; *Lowe* vs. *Blair*, 6

Morgan *vs.* Butterfield.

*Ib.* 282; *Clark* vs. *Snelling*, 1 *Cart.* 382; *Hoffman* vs. *Brown.* 1 *Halst.* 429; *Chambers* vs. *McDowell*, 4 *Geo. R.* 185; *Guard* vs. *Whiteside*, 13 *Ib.* 7; see also *Belshaw* vs. *Bush*, 14 *L. & Eq. R.* 269; *Salmon* vs. *Webb*, 16 *Ib.* 37; *S. C. in Exch. ch. & Q. B.*, 13 *Adol. & El. N. S.* 886, 894.) After much consideration we held a contrary docrine in Robinson *vs.* Godfrey, 2 Mich. R. 408. We are now asked to reconsider the question, and in view of the great and accumulating weight of precedent against our decision, it is proper that we should do so.

The numerous cases above referred to, all agree in this, that a covenant not to sue for a right resting in contract is a distinct and independent, or as it is sometimes expressed, a collateral undertaking, giving a separate right of action in case of its breach, and not a mere modification of the rights and obligations of the original contract to which it refers.

Assuming this proposition, the conclusion arrived at necessarily results, viz: that such a covenant cannot be availed of in defence of an action on the contract, unless where the damages recoverable in that action, and those recoverable for a breach of the covenant, would be equal. Then it may be, upon the principle of avoiding circuity of action.

The cases are not agreed as to the ground upon which the proposition referred to is to be maintained.

The English, and some of the American Courts, tacitly concede that a covenant not to sue for a limited time, is intended by the parties to suspend the remedy; a concession which implies that it is intended to be a mere modification of the rights and obligations incident to the original contract. But they say that it is a rule of law, that a remedy once suspended by act of the party is gone forever. Therefore, to construe the agreement as a temporary suspension of the right of action, would make it a release. As the parties never could have intended that it should operate as a release, it is held not to suspend the remedy at all, but merely to

78

give a right to damages in case of its breach. See Ford *vs.* Beech, *supra,* and an analysis of the earlier English cases, in Robinson *vs.* Godfrey, 2 Mich. R. 412–13. Also, Winans *vs.* Huston, Belshaw *vs.* Bush, and Salmon *vs.* Webb, *supra,* and per Marshall, J., in Garnett *vs.* Macon, 2 Brock. R. 222.

On a careful re-examination of the authorities, we are confirmed in the opinion we have before expressed, that there is no such principle of law as that assumed as the basis of this reasoning.

It was anciently held that where a creditor appointed his debtor his executor, and afterwards died, the debt was *extinguished.* The reasons given for it were not always uniform and consistent. Some Judges held that by the appointment, it was the intention of the testator to make the debt a legacy to the executor. (*Co. Litt.* 264, *C. note* (1) *by Butler; 2 Bl. Com.* 512; *per Powell, J., in Wankford* vs. *Wankford,* 1 *Salk.* 303; *per Jackson, J., in Stevens* vs. *Gaylord,* 11 *Mass. R.* 266–7; *Marvin* vs. *Stone,* 2 *Cow. R.* 807, 809.) But the explanation oftener given was, that as the executor could not maintain an action against himself, the remedy for the debt was suspended, and that a remedy once suspended by act of the party was gone forever. (*Needham's case,* 8 *Co.* 136; *Freyer* vs. *Gildridge, Hob.* 10; *Dorchester* vs. *Webb, Cro. Ch.* 373; *Wankford* vs. *Wankford,* 1 *Salk.* 299; *Thomas* vs. *Thompson,* 2 *J. R.* 471.) So hard and unjust a rule as that the debt was extinguished in such a case, upon whatever reasons founded, could not stand the test of time. Struggling against judicial conceits, and the illusions created by the misuse of language, and at last aided by the interposition of the courts of equity, (2 *Will. on Ex.* 1123, 1129, *and cases there cited,*) the rule has come at length to be established, both in courts of law and chancery, that where an executor is indebted to his testator at the time of his decease, the debt is *not extinguished* in the sense in which it was at first supposed to be, but is regarded and must be accounted

for as paid. In other words, the debt becomes prima facie evidence of assets in the hands of the executor, to be accounted for and adjusted in probate account, as assets actually realized. (*Freakly* vs. *Fox*, 9 *B. & C.* 130; *Ipswich Man. Co.* vs. *Story*, 5 *Metc.* 313; *Pusey* vs. *Clemson*, 9 *S. & R.* 204; *Bigelow* vs. *Bigelow*, 4 *Ham.* 138; *Cary* vs. *Goodwyn*, 3 *Br. Ch. R.* 110; *Berry* vs. *Usher*, 11 *Ves.* 87; 2 *Story's Eq. Juris.*, § 1209.)

In Dorchester *vs.* Webb, (*Cro. Ch.* 373,) it was said, and the same remark may have often been repeated in the early cases, that "where the feme debtee takes the debtor to husband, or if a man debtee takes the debtor to wife, that is a release in law, because they may not be sued, and personal actions once suspended are perpetually suspended." But I imagine no one will question that the doctrine that the debt is extinguished in such cases has a much broader and deeper foundation in the incidents of the marital relation than this reason indicates. By marriage, the husband at the common law acquires all the wife's personal property, and the right to reduce her choses in action to possession and ownership. He becomes liable also to pay and perform her ante-nuptial debts and contracts. By that event, therefore, the right to receive and the obligation to pay pre-existing debts from the husband to the wife, and *vice versa*, are united in the husband.

We think these cases of the debtor husband, wife, and executor, all rest upon this principle, viz: that whenever there is a concurrence of the right of action, and the corresponding obligation in the same person, whether by act of the parties or by act of the law, the rights of the obligation are *ipso facto* extinguished, not because of the suspension of the remedy, but because the thing which before was in action, is by that event reduced to possession. Whenever being so reduced to possession, the party becomes a trustee for others, as in the case of a debtor executor, he is liable to account to the *cestuy*

*que trust ;* but where as in the case of the debtor or creditor husband, he becomes entitled absolutely, there is of course no such liability.

Now these cases and one or two others strictly analogous and reducible to the same principle, (*Lord North* vs. *Britts, Dyer,* 140 *a.,*) are all the authorities which, so far as I have been able to learn, have ever been cited to sustain the doctrine that a remedy once suspended by act of the party is gone forever. I think it is obvious that they tend in no degree to establish it. I shall not, therefore, stop to examine the numerous other cases, both ancient and modern, which are utterly at war with such a doctrine. But I will only add that if this conclusion is correct, it is manifest that the rule that a covenant not to sue for a limited time, when between the same parties as the original contract, is a separate and independent undertaking, and will not suspend the remedy upon that contract, is based in the English Courts, upon a radical error.

In Massachusetts, however, the same doctrine has been made to rest upon different ground. The Courts of that State have always been wary of admitting the principle that a remedy once suspended by act of the party is gone forever, but they held that a covenant not to sue for a limited time, is in its nature, and not because to construe it otherwise would make it a release, an independent, or as they term it, a collateral undertaking. See Foster *vs.* Purdy, 5 Metc. 442, and other cases cited, *supra.* And it must be admitted that they are not without much appearance of authority to sustain this view.

Thus, although it has always been held that, as between the parties to it, a covenant never to sue, (between which and a temporary covenant it would be difficult to draw any distinction in respect to the question we are considering,) was a release, yet it has been generally said that this effect was given to it only upon the principle of avoiding circuity of

action, thus assuming that it is a distinct and independent undertaking. And when it came to be established that a release of one of several co-debtors, whether jointly, or jointly and severally liable, was a release of all, and the question arose as to whether an agreement never to sue would have the same effect; it was held that it would not, because such a covenant was not in its nature a release, but the effect of a release was only given to it as between the parties, to avoid circuity of action. This has been so often asserted that it certainly requires some boldness to question it, but if we look into the matter, I think it will be found that there is a substantial difference between a release and a covenant not to sue, which explains in a different if not in a more satisfactory manner, why the former will discharge co-debtors and the latter will not. The reason, (and if the question were now an open one, as it is not, it may be doubtful whether it would be deemed quite satisfactory,) I say the reason why a release of one debtor releases all jointly liable is, that such is presumed to be the intention of the parties, because unless it was held to do so, the co-debtor after paying the debt might sue him who was released for contribution, and so in effect he would not be released. And accordingly where there is a qualification in the release which negatives such intents and leaves the releasee liable to the rights of the co-debtor, the latter will not be discharged. (_North_ vs. _Wakefield_, 13 _Adol. & El._ 563; _Solley_ vs. _Forbes_, 2 _Brod. & Bing._ 38; 1 _Pars. on Cont._ 24.) Another reason was suggested by Savage, C. J., in Catskill Bank vs. Messenger, (9 _Cow._ 38,) namely, that the release is an admission by the creditor that his debt is paid; but this is still less satisfactory and manifestly not the original ground of the doctrine. Now a covenant never to sue does not imply that the debt has been paid, but quite the contrary. Nor when made with several co-debtors does it, like a release, imply that it was not the intent of the parties to leave the releasee liable to be sued for contribution

by the co-debtors in case they should be compelled to pay the debt. And this is the view which has often been taken of it. (*Per Gibbs, C. J. Hutton* vs. *Eyre,* 6 *Taun.* 295, 296; *per Nelson, C. J., in Couch* vs. *Mills,* 21 *Wend.* 426; *per Parke, B., in Kearsley* vs. *Cole,* 16 *M. & W.* 135.) Where the co-debtors are jointly and severally liable, no doubt a covenant not to sue one of them is an independent and collateral undertaking. This is not because it is in its nature so in all cases, but because it is not in such a case between the same parties as the original contract. (*Per Lord Chancellor, in Salmon* vs. *Webb,* 16 *Eng. L. & Eq.* 43.) And as by the rules of law, none of the joint debtors can be sued without suing all, to construe the covenant otherwise than an independent undertaking, would be to make it in effect a covenant with all, which the very circumstance that it was made with one only, and does not in its terms imply that the others are to be discharged, shows was never intended.

If these views are correct, the cases relied upon by the courts of Massachusetts, although they assert, do not conclusively establish the principle that a covenant not to sue is always an independent and collateral undertaking. All they decide is, that a covenant never to sue, when made between all the parties to a contract, is in effect a release, and when made with one of several jointly liable, it is not so, but is a collateral undertaking. Neither of these propositions do we propose to controvert.

After this preliminary examination of the authorities cited at the commencement of this opinion, we will proceed briefly to state our own views of the nature and effect of a covenant not to sue.

It will not be questioned that the rights and obligations incident to a contract may be extinguished or modified by a new agreement between the same parties, plainly expressing or implying an intention so to extinguish or modify them. (*Per Lord Denman, in Goss* vs. *Lord Nugent,* 5 *B. & Ad.*

58; *Rhoades* vs. *Thomas*, 2 *Cart.* 638; *Thrush* vs. *Rooke*, 1 *Esp.* 54; *Cuff* vs. *Penn*, 1 *M. & S.* 21; *Jeffrey* vs. *Walton*, 1 *Stark.* 267; *Bailey* vs. *Johnson*, 9 *Cow.* 115; *Low* vs. *Treadwell*, 3 *Fairf.* 441; *Richardson* vs. *Hooper*, 13 *Pick.* 446 ; *Cummings* vs. *Arnold*, 3 *Metc.* 486, 489 ; *Robinson* vs. *Batchelder*, 4 *N. H.* 40.)

And where the new agreement is a modification, either express or implied, of any of the express *terms* or stipulations of the original contract, I am not aware of any instance in which it has been held to be collateral to or independent of it. It has been held to constitute a new contract, consisting partly of the original contract, and partly of the new agreement engrafted upon it, and has been declared upon or availed of by way of defence as such. Cases of this kind are very numerous. Bailey *vs.* Johnson, 9 Cow. 115; Cummings *vs.* Arnold, 3 Metc. 486; are express decisions upon this point. See also, Mead *vs.* Degolyer, 16 Wend. 640, per Cowen, J.; Richardson *vs.* Hooper, Robinson *vs.* Batchelder, Low *vs.* Treadwell, Jeffrey *vs.* Walton, cited above.

But the rights and obligations of a contract depend not solely upon its terms or stipulations. They depend also upon the existing law applicable to its construction and enforcement, which law, without any express stipulation of the parties, enters into and forms a part of the contract. The right of the one party is simply a right by means of the established legal remedies to such performance, or such damages for the breach of the contract as the law gives. The obligation of the other is what the law, through the instrumentality of these remedies, will compel him to pay or perform. The law applied to the contract is the measure of each. Without some law to enforce it, the agreement of the parties would be a mere *nudum pactum*. It would not be in legal sense a contract. However binding in conscience, it would confer no right but a mere moral claim, and impose no obligation but a mere duty. These principles are now too well estab-

lished in this country to admit of question. (*Bronson* vs. *Kinzie*, 1 *How. U. S.* 311; *McCracken* vs. *Hayward*, 2 *Ib.* 608; *Willard* vs. *Longstreet*, 2 *Doug. Mich. R.* 172; *Mundy* vs. *Monroe*, 1 *Mich R.* 68; *Cargill* vs. *Power*, *Ib.* 369; *and numerous cases elsewhere.*) And if they are conceded, if it is admitted to be true that the law of the remedy does thus enter into and form a part of the contract, and concur in originating its rights and obligations, it results that the contract may be modified or extinguished not merely by a release or new agreement, changing its express terms, but also by an agreement not to assert the remedies which the law gives for its enforcement. A new agreement not to sue for a limited time, is a mere modification of the original contract, which under the law that formed a part of it, gave the right to sue immediately on default. It is exactly equivalent in its effects upon the contract to a legislative suspension of the law of the remedy, or an agreement between the parties to extend the time of performance or payment, which latter agreement is now universally held to be a mere change of the original contract. It is manifestly inconsistent and absurd to hold that the former of these agreements is independent and the latter is not, that the one modifies the contract and the other does not, and that the one will suspend the remedy and the other will not, since it is impossible to point out any distinction between them, except in the language used by the paties to express their intentions. So upon these principles, an agreement never to sue, in legal sense, destroys the contract. It is exactly equivalent in its effects, as between the parties, to an entire and permanent repeal of all laws for the enforcement of the contract, or a technical release. It operates as a release, not as it has so often been said, upon the principle of avoiding circuity of action, but because in substance and effect it is a release. Upon principle, then, whatever may be the weight of precedent to the contrary, originating when the source of the rights and obli-

Morgan *vs.* Butterfield.

gations of contracts was much less perfectly understood than it now is in this country, we think it is clear that an agreement not to sue for a right resting in contract, when between all the parties to the contract, is never a distinct and independent undertaking, upon which an action is maintainable, but a mere modification or extinguishment, according as it is temporary or perpetual, of the rights and obligations of the contract, and as such may be availed of in defence of an action founded upon it. No one, we imagine, will carry his legal optimism, or his reverence for the sound and venerable maxim of *stare decisis*, so far as to question that this construction of the agreement is in accordance with the true intent of the parties.

I do not here propose to examine the authorities direct and indirect in support of this view. They were fully considered by us in delivering our opinion in the case of Robinson *vs.* Godfrey, to which opinion we still adhere.

But while we are of the opinion that the facts set forth in the defendant's plea in this case are a good defence to the action, we think they were not well plead in abatement. They go in denial of the plaintiff's right of action, and matter which is merely in denial of the right of action, is never pleadable in abatement, (*Steph. Pl.* 47,) but must be pleaded in bar.

The Court below should have sustained the plaintiff's demurrer to the plea upon this ground.

For this reason, therefore, the judgment of the Court below overruling the demurrer, must be reversed with costs.

The other Judges concurred.