HENRY B. NIGHTINGALE AND OTHERS ads. JAMES ME-
GINNIS.

1. A valid agreement between the holder of a note and the maker to
   extend the time of payment, will discharge an endorser who is not a
   party to such agreement.
2. But the payment of a bonus to procure such extension will not form
   a legal consideration for such agreement, inasmuch as the statute (*Nix.
   Dig.* 439*) renders such bonus a part payment on the note.
3. The holder of a note, on which the defendants were endorsers, agreed
   with the maker, after the note fell due, in consideration of the pay-
   ment of a certain sum of money, to extend the time of the payment
   of the note; *held*, that the money so paid, by force of the statute of
   this state relating to usury, operated as a part payment of the prin-
   cipal of the note, and that, as it formed no valid consideration to the
   promise to give time, the defendants were not discharged as endorsers.

Suit upon a promissory note made by Nightingale to the
order of Cranmer & Ronsavall, two of the defendants, by
whom it was endorsed for his accommodation. The note was
drawn in Pennsylvania, and was payable at a particular
place in that state. Not being paid at maturity, the liability
of the endorsers was fixed by demand and notice. After-
wards the maker of the note, Nightingale, made an agree-
ment with Meginnis, the plaintiff, and without the consent
of the endorsers, for a further credit for a fixed period; the
consideration being a premium over and above legal interest
at the time of this agreement to extend the time of payment,
was paid to the plaintiff.

There was a verdict for the plaintiff, and the case was cer-
tified to this court for its advisory opinion.

It was heard before BEASLEY, CHIEF JUSTICE, and BEDLE,
WOODHULL, and SCUDDER, Justices.

For plaintiff, *Charles A. Skillman.*

For defendant, *J. C. Rafferty.*

*Rev., p. 519, § 2.*
VOL. V. 2 F

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.    In this case the endorsers on the note in suit claim to have been discharged on account of an agreement to extend the time of payment, made without their knowledge or consent, between the plaintiff and the maker.    That such would be the effect of an efficient agreement of this nature was decided by this court in *Bell* ads. *Martin,* 3 *Harr*. 167, and the doctrine can admit of no doubt. The only inquiry is, whether the contract alleged in the present instance is valid upon legal principles.

The transaction in question was this : two of the defendants, Messrs. Cranmer and Ronsavall, were accommodation endorsers on the note of the defendant, Nightingale.    This note was discounted by the plaintiff, and not being paid at maturity, the proper steps were taken, and the endorsers made liable.    The note had been drawn in Pennsylvania, and was payable at a designated place in that state.    In this condition of affairs the contract now to be tested was entered into, and it was to this effect : the maker of the note paid the plaintiff the sum of $10, in addition to legal interest, and in consideration of such payment, the plaintiff agreed to a month's delay in the payment of the sum due.    On the part of the plaintiff the position taken is, that there is no consideration sustaining this promise to give time.    The affair occurred at Stockton, in this state, and it is urged that, by the operation of our law, the premium given for delay was, in legal effect, a payment, and nothing more, of a part of the principal sum due.    This proposition is advanced on the strength of the supplement to the act against usury, (*Nix. Dig*. 439,*) which, stript of irrelevant terms, is to the effect following : "In all cases of suits at law or in equity to enforce any note, bill, bond, mortgage, contract, &c., which shall hereafter be made for the payment or delivery of any money, wares, merchandise, goods, or chattels lent, and on which a higher rate of interest shall be reserved or taken than was or is allowed by the law of the place where the contract was made or to be performed, the amount or value

* *Rev., p.* 519, § 2.

actually lent, without interest or costs of suit, may be recovered, and no more ; and if any premium or illegal interest shall have been paid to the lender, the sum or sums so paid shall be deducted from the amount that may be due as aforesaid, and recovery had for the balance only."

It does not seem questionable, if this statute is applicable to the contract in hand, that the view of the plaintiff is right. In plain language, the act declares that the premium paid shall be deducted from the real sum due, so that, by force of this provision, the $10 received by the plaintiff on the occasion referred to went, by operation of law, and in despite of the contrary intention of the parties, in discharge of that amount of the money due at the time. It is obvious, therefore, that the plaintiff, by the arrangement which he made, got nothing of legal value to which he was not before entitled. The principle underlying the leading case of *Cumber* v. *Wayne*, 1 *Strange* 425, goes to the effect that a consideration, to be good at law, must consist of something more than what the promiser has, at the time, a right to claim. In this case, at the date of the bargain, the principal was due upon this note, and the payment of a part of that principal did not confer any new right or benefit upon the plaintiff. His promise to forbear was, therefore, founded on no valid consideration, and the rule is entirely settled that the engagement to give time to the maker of a note must be obligatory, in order to discharge the endorser. Owing to the invalidity of this contract in this particular, the two endorsers of this note were not freed from their obligation, and the verdict was rightly taken against them.

Two grounds in opposition to this view were pressed upon our attention.

It was said, first, that this was a Pennsylvania contract, and that the usury laws of this state were inapplicable. But the fact is not so. It is true that the note was drawn and made payable in Pennsylvania; but at the time of the contract now in question, that note had fulfilled its office, and, considered as a contract, had no further legal effect :

the money mentioned in it had become a general debt, which was not payable at any particular place. The contract to give a further credit being made in this state, had no reference to any other place, or to the law of any foreign jurisdiction. It was a new contract, made here and to be fulfilled here, and is consequently subject to our laws.

But, in the second place, it was urged that the provision of the statute of usury just recited does not apply in the present instance, because, by the very terms of the act, there is no prohibition against taking a rate of interest which is not higher than is allowed by the laws of the place where the contract was made or was to be performed, and that the contract here referred to, in its application to this case, is the note now in question. If this assumption, that the note in this case is the contract referred to in the act, had any warrant in what I deem a proper construction of the section, I should agree at once to the deduction made on the part of the defence, for then, as the law of Pennsylvania is not in proof, it would not appear that any usury existed. But I cannot read the statutory clause in this way. The contract meant by the act is obviously the contract on which the suit is founded, and on which the recovery must be based, and that contract in this case, as I think, would be the agreement extending the time of payment, if such agreement were held to be valid. Even where the force of a contract is not spent, and it is, by a subsequent stipulation, altered in any material term, such altered contract is, in law, regarded as a new agreement, and if a suit is brought to enforce it, such suit must harmonize with its new form. *Smith on Cont.* 93. And so completely is this doctrine carried out, that where the original contract is by deed and the alteration by parol, it is uniformly held that the action founded on such legal obligation must be adapted to its changed form. The language of the authorities is, that the alteration of a written contract by parol makes it all parol, and, in order to render a parol variation available, the action should be grounded on the subsequent agreement, with which the specialty is

considered as incorporated. *Mead* v. *DeGolyer*, 16 *Wend.*
632; *Littler* v. *Holland*, 3 *Term R.* 590; *Brown* v. *Good-
man*, 3 *Term R.* 592; *Stryker* v. *Vanderbilt*, 1 *Dutcher* 496;
*S. C.*, 3 *Ib.* 76. If this, then, be the rule with respect to
executory contracts, *a fortiori* must it apply to contracts
which have expired, leaving, as their entire result, a debt
unpaid. In the present case, the note was past maturity; a
sum of money was thereby due and payable to the plaintiff,
and if, in a valid form, he had agreed to wait a month for
that money, no suit would have lain in his favor on the note.
A suit brought before the expiration of the month for which
a new credit was given would have failed on the ground of
the new contract. For these reasons it seems to me clear that
the statute applies to the present case. This construction will
promote the general design and spirit of this statute, for the
opposite view would lead to this result, namely, that when the
inception of a loan is out of this state, it may be renewed by
repeated extensions, on the payment of premiums within our
jurisdiction, at the will of the parties. But such premiums,
according to my interpretation, by force of this act, operate as
payments upon the principal, and in this way our law frus-
trates the unjust bargain to renew. The consequence also is,
that such premiums, being mere payments, cannot form any
legal consideration for new promises.

Court below advised to enter judgment on the verdict.

CITED *in Trusdell* v. *Jones*, 8 *C. E. Gr.* 122, 556; *Laing* v. *Martin*, 11 *C.
E. Gr.* 93; *Terhune* v. *Taylor*, 12 *C. E. Gr.* 81.