### D. M. OSBORNE & CO. V. MARTIN.

1. When a special contract is entered into for the sale and delivery of personal property, a substantial performance by the vendor, is a condition precedent to his right of action against the vendee for the price of any part of the property delivered under the contract.

2. The plaintiff, through its local agent, agreed to sell and deliver to the defendant a seven foot binder, or a seven foot platform, to be attached to a six foot machine, which the defendant was permitted to take and use until the seven foot binder, or seven foot platform, should be received. Plaintiff failed to deliver the seven foot binder, or seven foot platform. *Held,* that plaintiff was not entitled to recover on the note, though the defendant still had the six foot machine in his possession.

3. At about the time said agreement was made, the plaintiff, not having a seven foot binder on hand, permitted the defendant to take a six foot binder to use until the seven foot machine should be delivered, or a seven foot platform delivered to be attached to the six foot machine. The defendant used the six foot machine two seasons, and had it in his possession at time of trial; but on several occasions he had offered to return it, and receive the seven foot machine, and at all times insisted on the delivery of the seven foot machine, or seven foot platform for the six foot machine. *Held,* that the retention of the six foot machine under the evidence, was no waiver of the delivery of the seven foot machine or platform.

(Syllabus by the court.    Opinion filed Nov. 24, 1893.)

Appeal from circuit court, Brule county. Hon. D. HANEY, Judge.

Action on promissory notes by D. M. Osborne & Company, a corporation, against William Martin. There was judgment

for defendant, from which, and an order denying a new trial, plaintiff appeals. Affirmed.

The facts are stated in the opinion.

*H. C. Preston,* for appelant.

*Edwin Greene,* for respondent.

CORSON, J. This was an action to recover the amount of two promissory notes, dated August 2, 1886, for $100 each, executed by the defendant to plaintiff. The defendant in his answer alleged that said notes were given in part payment for an "Osborne seven-foot binder," to be sold and delivered to the defendant within a reasonable time, and upon no other consideration, and that plaintiff had not sold or delivered said binder to the defendant. Defendant, also, by way of counter claim, alleged that he paid $15 on account of said binder, and demanded judgment for that sum. The plaintiff, replying to said answer, denied each and every allegation therein contained, and, by way of further reply, alleged that, at about the time of the delivery of said notes, defendant desired to purchase a seven-foot binder, but, being informed that it had only a six-foot binder, defendant then and there accepted the same, and has since retained it. A trial was had before the court and jury, and a verdict and judgment rendered for the defendant. A motion for a new trial was made and denied, and plaintiff appeals from the judgment and order denying the new trial. Several errors are assigned, but the only one relied on in the argument is stated by the counsel for the appellant, in his brief, as follows: "That the evidence is not sufficient to sustain and justify the verdict, in that it shows that the defendant kept and used the machine (six-foot binder) for some four or five years, and never returned or offered to return the same to the plaintiff." The only question presented to the court for its determination, therefore, is, was there evidence sufficient to justify the verdict?

The defendant testified, in substance: "I purchased this

binder of Henry Bockfinger & Co., plaintiff's agents, of Kimball, at the purchase price of $215. These notes were for $200, and the $15 was paid in cash. The transaction I had with Bockfinger in regard to the purchase of this binder and giving the notes is as follows: He came to Pukwana to sell me a binder. He said he would sell me a small cut for $185, and a seven-foot cut for $215. I made arrangements for a six-foot cut for $185. I went to Kimball shortly afterwards,—it was near harvest time then,—and about two days after I had given the order for the small cut, and asked if he would give me a large cut. He said he would, for $215. I told him to telegraph for it, and he said he would. He said it would be there on Wednesday. I went up there Wednesday, and it had not come, and he told me it would be there on Friday. Friday, John Knight and I went up, and he told me he had got word it was to Plankinton; that is, this seven foot binder. I told him I would not take any machine. 'Well,' he said, 'it will be here * * * You can take this (six-foot binder) and use it till the other one comes. Then, I will exchange with you.' I took it down, and he sent a man to set it up, and, when I got about 20 acres cut I saw Bockfinger, * * * and I asked him if the machine had come, and he said 'Yes,' but he had sold it, and said, 'When you get through with this I will exchange with you, and give you another.' I asked him then about this machine—if I would haul it up and get the other,—and he said, 'I have not got another, but wait till it comes, and then you can haul it up.' Saw him and Mr. Ringe, * * * and Mr. Ringe said I should have the large cut. Ringe was the head man. He was from Sioux Falls, when I gave these notes. When I first saw Bockfinger, I ordered a six-foot machine, and when I went up to Kimball to consummate the arrangements I changed my mind and bought a seven-foot binder. I was to pay $30 more. I wanted to exchange the six-foot binder for the seven-foot binder. I offered to do this two or three times with Mr. Bockfinger. During the communications with Mr. Bockfinger

for the purchase of the machine, he gave me a writing    [The paper was read in evidence, and is as follows:  "Kimball, Dak. July 27, 1886.   This is to certify that Wm. Martin has purchased an Osborne 7-foot binder, and has privilege of selling or trading any horses he may mortgage when said binder is delivered, provided he replaces property sold, or pays the cash received from any sales of security to D. M. Osborne & Co.   In case security is replaced, said Wm. Martin is to pay all costs, such as filing and making out new mortgages.   Bockfinger & Co."]   This writing was given me after I had taken down the six-foot binder."    Another agreement, of same date, being called to his attention, he said:  "The reason why this other agreement was executed was that I told him that I wanted to get the machine before I would ever give my notes.  I wanted to get the machine I had ordered.   He told me Ringe was coming and he wanted to fix up, and I said I wanted papers to show that I was entitled to a seven-foot binder, 'what I have bought of you.' He said, 'I will make you out a contract that will entitle you to a seven-foot machine.'   After I [he] had done that I went and gave him my notes."   The contract referred to reads as follows: "Kimball, Dak., July 27, 1886.   This is to certify that Wm. Martin is entitled to a seven-foot platform for his binder, having ordered a seven-foot cut.   He is entitled to an exchange in platforms as soon as one can be procured.   Bockfinger & Co."   It may be proper here to state that defendant testified that the only difference between a six and seven-foot binder was in the platform, and this evidence seems not to have been controverted.   He further testified:  "The reason I gave my notes was, he told me, I think, that the head man was coming, and he wanted to have things fixed up in good shape,—it looked better; and I told him, 'All right.'"   Defendant further testified that he told Hall (plaintiff's collecting agent) on several occasions that he had not received the machine he bought, and would not pay the notes unless he did receive it.   At one time he says:  "I told him, 'if you will give me a seven-foot platform

I will be satisfied, and will fix up with you.' He said, 'I won't give you $75. You will have to pay for what you get.' He said it would cost $75 to put this new platform on.'' This last conversation is admitted by Hall in his evidence, though he denied that defendant had made any complaint before in conversations he had with him in reference to payment of the notes. On September 6th the defendant executed to Bockfinger a chattel mortgage which included, among other property, a binder. In regard to this chattel mortgage defendant testified: "I told him (Bockfinger) I would not give that until I got my binder, but I did give him the mortgage and notes when I had the six-foot cut, and had it in my possession." Counsel for appellant insists that the binder mortgaged was the one the defendant then had in his possession, while the counsel for the respondent contends it was the seven-foot binder purchased and mentioned in the first paper. The question, therefore, as to which binder was intended, was a proper one for the jury, under all the evidence in the case.

The learned counsel for the appellant contends that the facts show clearly that the defendant, notwithstanding his order for a seven-foot binder, and the writings executed by Bockfinger & Co., accepted the six-foot machine and kept it several years, and thereby waived the delivery of the seven-foot machine and the seven-foot platform, and that he was only entitled, in this action on the notes, to a deduction of the difference between the two machines, which he could have had allowed him under proper pleading, but, in our view of the facts, we think there was evidence to justify the jury in finding that the notes were given for a seven-foot binder or a binder with a seven-foot platform, and that, such a one not having been received by him, he was not liable on the notes. The making of the original contract; the subsequent execution and delivery of the two writings, somewhat conflicting, bearing the same date, July 27th; the subsequent execution of the notes on August 2d, and the subsequent execution of the chattel mortgage bearing

date September 6th,—renders the transaction somewhat con-
fused, yet it is quite apparent that defendant did not purchase,
or intend to purchase the six-foot machine, unless it had at-
tached thereto the seven-foot platform, and that the notes were
executed, and the $15 paid, for a seven-foot machine, or, to
give the evidence the most favorable construction for the plain-
tiff, a machine with a seven-foot platform. It is conceded that
he neither received the seven-foot machine, nor the seven-foot
platform. There was therefore no consideration for the notes,
unless the defendant, by retaining the six-foot machine, waived
his contract for the seven-foot machine, and accepted the six-
foot one in fulfillment of plaintiff's contract. This the jury
failed to find from the evidence, and we think they were justified
in not so finding. The defendant was not bound to return the
six-foot machine at any particular time, nor until the seven
foot machine or platform was delivered to him. He offered
several times to return it, and receive the machine he had pur-
chased, or the seven-foot platform it was stipulated he should
have, but neither seems to have been furnished him; and after
a time he purchased another machine,—when, does not dis-
tinctly appear. While, therefore, it is true, he kept and used
the six-foot machine two seasons, and had it in his possession
at the time of the trial, yet he had repeatedly offered to return
it, and all the while insisted upon the plaintiff fulfilling its con-
tract.

The defendant was peculiarly situated. The plaintiff had
his notes and mortgage to pay for the machine he purchased, but
he did not have the machine. He could not safely—for a time,
at least—purchase another, and he was therefore, by the act of
the plaintiff, compelled to use the six foot machine, or have
none. When, if at any time, the plaintiff was entitled to a re-
turn of the six-foot machine, it is not necessary now to decide.
''The principle is well settled that, where a special contract is
entered into for the sale and delivery of property, a full per-
formance by the vendor is a condition precedent to his right of

action against the vendee for the price of any part of the property delivered under the contract." Page v. Ott, 5 Denio, 406; Pratt v. Gulick, 13 Barb. 297; Mead v. De Golyer, 16 Wend. 633.

Even conceding that the second writing was intended to modify the original contract by substituting the seven-foot platform for the six-foot one in the six-foot machine,—the view of the case most favorable for the plaintiff,—yet the plaintiff could not recover until it had completed the machine according to this new contract; and, in that view of the case, the defendant had a perfect right to keep the possession of the machine furnished, and use it until the contract on the part of the plaintiff was complied with, and, if the balance of the machine to complete it was not delivered, defendant was under no obligation to pay for the part delivered. In Mead v. DeGolyer, *supra*, it appeared that the plaintiff had contracted to furnish and deliver to defendant a certain amount of timber, but, after delivering a portion, refused to deliver the balance, and brought suit for the value of that delivered. Bronson, J., delivering the opinion of a majority of the court, said: "What, then, is this case? The plaintiff agreed to deliver a large quantity of timber, for which he was to be paid, except the part which he has already received, when the whole quantity should be delivered. He furnished a part of the timber, and then, without any excuse or apology whatever, stopped short, and now claims to recover for the timber actually delivered. The mere statement of the case furnishes a complete answer to the action. Courts have no dispensing power to absolve men from their legal engagements, nor can they make contracts for them. The delivery of the timber was a condition precedent to the payment of the price; and the plaintiff must first perform on his part, before he has any ground of complaint against the defendant. This court has never held any other doctrine. I shall not go through with the cases. It will be enough to refer to a few of them. McMillan v. Vanderlip, 12 Johns 165; Jennings

v. Camp, 13 Johns, 94; Ketchum v. Evertson, Id. 359; Wood v. Edwards, 19 Johns, 205; Champlin v. Rowley, 13 Wend. 258; Sickles v. Pattison, 14 Wend. 257." A similar decision was enunciated in Paige v. Ott, *supra*. In that case, the court says: "The plaintiff agreed to furnish and deliver to the defendant certain descriptions of lumber, at specified prices, to be delivered on or before a certain day, and payment was to be made when it was all delivered and accepted. He had delivered a considerable portion of the lumber before the day fixed for the delivery by the contract; but, as he had not delivered it all by that day, it is clear that, under the contract, he could not recover even for what he had delivered, as the contract is an entire thing, and the delivery of the whole of the lumber by the day was a condition precedent to the right to the payment for any part." "If a part, only, is delivered, the vendor cannot recover for the portion delivered, unless the delivery of the residue was prevented by the vendee. Champlin v. Rowley, 13 Wend. 258, affirmed in error 18 Wend. 187; Ketchum v. Evertson, 13 Johns, 359; Mead v. Degolyer, 16 Wend. 632. I consider the two cases of Chaplin v. Rowley and Mead v. Degolyer, one of which was the adjudication of the court of dernier resort, as conclusive upon the question presented by the case now before us. The current of decisions in our our own courts has been uniform, * * * and unless he furnished the entire lumber according to the bill, and by the time mentioned in the new agreement, he is not entitled to recover even for that which he has delivered. In my judgment, the report of the referees should be set aside. Motion granted." The doctrine laid down in these decisions, and the cases therein cited, seems to be approved in Avery v. Wilson, 81 N. Y. 341; cited and relied upon by counsel for appellant, but that case possessed some peculiar features that took it out of the general rule. In that case the plaintiffs had contracted to deliver to the defendant 699 boxes of glass, presumably, at the same time. They delivered 365 boxes, and subsequently offered to deliver the balance of the

boxes, but defendant refused to accept them because not delivered in time. In an action by the plaintiffs for the value of the 365 boxes delivered, the court held that the defendant, by accepting the 365 boxes without objection that all were not delivered, and retaining and using them without objection, was liable to pay for the boxes received, and that the condition that all should be delivered was waived. There were other circumstances, also, making it an exception to the general rule. We think the doctrine announced in that case, however, are not applicable to the case at bar. In this case the contract was for a seven-foot machine, and a six-foot machine was delivered to the defendant, to be used until the seven-foot machine was delivered, or, to take one view of the contract, until the plaintiff furnished the seven-foot platform for it, completing it as a seven-foot binder. The plaintiff neither delivered a new machine, nor a platform for the machine delivered, and the defendant, at different times, insisted upon the completion of the contract on the part of the plaintiff; and subsequently, after plaintiff had neglected for a considerable time to complete its contract, he purchased a new machine. To find that there was a waiver in this case, the jury must have disregarded a considerable part of the evidence given by the defendant, and which was not contradicted. We know of no principle of law that would entitle the plaintiff to recover, and hence the jury were fully justified in finding a verdict for the defendant. The judgment and order of the circuit court are affirmed.

BENNETT, P. J., concurring. KELLAM, J., having been of counsel in the case, took no part in the decision.