### WILLIAM H. ESTILL V. FRANCIS D. WEAVER.

In this case the defendant had contracted in writing, to deliver to the plaintiff at the warehouse of another, in the town of Shreveport, on a certain day, ten thousand pounds of merchantable lint cotton ; say one-half of the cotton was hauled by the defendant to the warehouse, and there deposited by the defendant, before the day of performance, and the other half three days after the day, the defendant taking the warehouse receipts in the name of the plaintiff ; the warehouse and first half of the cotton were consumed by fire before the day of performance. Held that the evidence disclosed no circumstances which would vary the ordinary import of the contract, which was, that the cotton should all be delivered to the plaintiff at a certain place on a certain day, and could not be delivered without the consent of the plaintiff, before the time nor in parcels ; and held further, that the evidence did not show consent of the plaintiff to receive the cotton before the time, nor in parcels ; and the jury having found against the plaintiff as to the one-half deposited before the day, the judgment was reversed on the ground that the verdict was contrary to the evidence.

Appeal from Rusk. Tried below before the Hon. William W. Morris.

The statement of facts, after giving the instrument sued on, as set out in the Opinion, continued as follows :

The plaintiff then read to the jury the following written agreement :

W. H. Estill v. F. D. Weaver. District Court of said County: The parties to this suit agree that the following facts exist in this cause, and that they go to the jury in the same manner as if they were proved by witnesses, viz :

1st. The defendant admitted that the plaintiff, at the warehouse of Messrs. Oglesby & Griswold, in the town of Shreveport, in Louisiana, on the 25th December, 1853, demanded of the defendant twenty thousand pounds of merchantable ginned or lint cotton ; that said cotton was not delivered to him according to his demand, and that said plaintiff proceeded to have

Estill  v.  Weaver.

the note sued on in this case, regularly protested by a Notary Public of the parish of Caddo, in said State of Louisiana. Defendant also agrees to admit in evidence, the statement of Oglesby & Griswold, or either of them, as to the value of merchantable ginned or lint cotton in Shreveport at that time.

2d. The plaintiff admits that the defendant delivered at the warehouse of Messrs. Oglesby & Griswold, in Shreveport, Louisiana, five bales of merchantable ginned or lint cotton, weighing 2,804 pounds, on 31st October, 1853 ; that he delivered five other bales of like cotton, weighing 2,498 pounds at the said warehouse of Oglesby & Griswold, on 11th November, 1853 ; and that he delivered at the said warehouse of Oglesby & Griswold, ten other bales of like cotton, weighing 5,000 pounds, on 28th December, 1853 ; that all of said cotton was marked in the name of the plaintiff and receipted for to him.

3d. The parties agree that the warehouse of Messrs. Oglesby & Griswold was destroyed by fire before the 25th December, 1853, and that the ten bales of cotton first above mentioned, were destroyed at the same time with it.

4th. The parties also admit that the receipts for the cotton were never delivered to the plaintiff.    Oct. 22d, 1855.

W. H. ESTILL.

W. STEDMAN, att'y for def't

The plaintiff then read to the jury, by agreement, the following statement by Oglesby & Griswold :

Wm. H. Estill v. Francis D. Weaver. In the District Court of Rusk county, Texas :    In this cause the undersigned, who were the individuals composing the firm of Oglesby & Griswold, at Shreveport, La., the 25th day of December, A. D. 1853, state that on said 25th day of December, A. D. 1853, good, merchantable cotton, well ginned and packed, was worth eight and a half cents per pound at their warehouse, in the said town of Shreveport, La.    April 18th, 1856.

R. C. OGLESBY,

CHAS. R. GRISWOLD.

The defendant read in evidence the following answer of plaintiff to special interrogatories propounded to him by defendant :

W. H. Estill v. F. D. Weaver.   No. 1150 :   The said W. H. Estill, to whom the defendant propounds special interrogatories, for answer to the same sayeth :

To the first interrogatory—that the defendant met the plaintiff in the streets of Henderson, and told him that he (defendant) was making preparation to pay the note sued on ; that he (defendant) was picking and packing a beautiful lot of cotton, and that, as the roads were good, he would take advantage of that circumstance and haul off the cotton to Shreveport, the place of delivery.   To this statement of defendant affiant remembers that he distinctly told defendant that he was glad to see him making preparation to pay off the note ; that all affiant wanted was, that the cotton should be ready for delivery at the time the note became due.   He (affiant) did not agree to accept the cotton as delivered.   He only agreed to accept it when the note became due.

To the second interrogatory affiant answers : that defendant did tell him that he had started ten bales of cotton to Shreveport, to be delivered at the warehouse of Oglesby & Griswold, and that the balance would be delivered as soon as it was ready.   This affiant replied that all he wanted was, the cotton on the 25th Dec., to be ready for him, to which defendant replied, it would all be ready.   In relation to the storing, affiant says that he told defendant he could store the cotton as he chose, and all that affiant wished was, for the cotton to be paid when the note became due.   Affiant may have told defendant when informed that cotton was stored in his name, that it was all right ; but he most positively denies that he ever did accept the ten bales as a payment, or in discharge of any part of the debt.

The defendant then examined Andrew C. Robinson, a witness for himself, who testified that, in the month of January

1854, he heard a conversation between plaintiff and defendant, in which conversation defendant informed plaintiff that he had delivered, or was then delivering, at the warehouse of Oglesby & Griswold, in Shreveport, La., the remaining ten bales of cotton. To this plaintiff replied, that he had had his note protested on the day it fell due, and he could not, therefore, receive it.

The jury found for the plaintiff the value of the cotton, less the value of the ten bales delivered at the warehouse before the 25th of December, 1853. Judgment accordingly; motion by plaintiff for new trial, overruled, &c. The petition which was filed on the 15th of April, 1854, alleged that the plaintiff and defendant were then citizens of Texas and residents of Rusk county.

*Armstrong & Parsons,* for appellant, cited Sneed & Cock v. Wiggins & Jones, 3 Kelly R. 94; Tyler v. McCardle, 9 Sm. & Marsh. 230 ; Story Eq. Ju. Sec. 776; Story on Cont. Sec. 809 ; Erwin v. Cook, 2 Dev. R. 183.

*W. Stedman,* for appellee. In support of the judgment it is respectfully submitted :

I. That a contract like the present must be construed with reference to the probable intention of the parties in view of the nature of the property to be delivered, the means of transportation in common use in the country, the distance between the place of residence of the defendant where the cotton was raised, and that fixed for the delivery. In Young v. Foster, 7 Porter, 420, it was held that a refusal to deliver part of a certain quantity of corn to be delivered on agreement, is not justified on the ground that all cannot be received at one time. The contract must be presumed to have been made in reference to the necessity of the case and the means of transportation common in the country.

In McGehee v. Hill, 1 Ala. 140, it is said : A contract for the delivery of ponderous articles, such as corn and fodder, is

Estill v. Weaver.

made with reference to the means of transportation common in the country, and when it cannot be delivered at one time, may be delivered at different times, but payment cannot be demanded until all is delivered.

To apply these rules to the interpretation of the contract in this case, we must consider the fact, that the plaintiff and defendant are both citizens of Rusk county. The distance between points geographically certain, is matter of judicial notice, and we may, therefore, take into view the fact that the residence of the defendant is distant at least sixty miles from Shreveport. The means of transportation were undoubtedly understood between the parties, (from the answers of the plaintiff as read in evidence.)

The cotton is to be sent in wagons—certainly the only means of transportation in common use. The amount of cotton stipulated was at least twenty bales. Now, can it be inferred in view of these circumstances, that it was ever in contemplation that the twenty bales should be delivered at the same time, and upon the very day stipulated. Time is not always of the essence of the contract, and many equities are taken into consideration as an excuse for failure to discharge an obligation at the very day. A subsequent compliance within a reasonable time would, under a variety of circumstances, be held to discharge an obligation. The principle, it seems to me, applies forcibly to a case where, in good faith, a party is seeking to discharge an obligation in advance of the stipulated time, and that by the implied assent at least of the creditor. That this was the undoubted understanding of both parties to this contract, appears from the fact that, in their subsequent conversations, the plaintiff fully assented to the course which the defendant proposed, viz : the delivery of the cotton in advance of the time agreed upon.

II. Whatever may be the fair interpretation of the written contract, the subsequent agreement between the parties operated as a modification so far as related to the time of perform-

ance. The conduct of the plaintiff, as shown by his answers to interrogatories, will warrant the conclusion that the cotton when delivered, though before the time stipulated in the written obligation, was to be regarded as delivered in fulfilment of the contract.

As to the effect of a subsequent modification of a contract, see Chit. on Cont. 624 ; Flagg v. Dryden, 7 Pick. 52.

III. If there be any doubt as to the existence of this subsequent agreement or modification of the original contract, it has been settled by the verdict.

It has always been held by this Court that the verdict of a jury upon the facts will not be disturbed unless manifestly wrong.

ROBERTS, J. This action is brought by appellant on the following written obligation, to-wit : On the 25th day of December, A. D. 1853, "I promise to pay and deliver to William H. Estill or bearer, in the town of Shreveport, Louisiana, at the warehouse of Oglesby & Griswold, or their successors, ten thousand pounds of merchantable ginned or lint cotton, for value received. November 3d, 1852.

SAMUEL C. THOMPSON. FRANCIS D. WEAVER."

Appellee, who was defendant below, relied on two defences :

1st. That, by the terms of the contract, in view of the circumstances under which it was made, appellee had a right to deliver the cotton in parcels less than the whole, before the 25th day of December, 1853, to the warehouse of Oglesby & Griswold ; and when so delivered in parcels, would be a discharge of the contract *pro tanto* ; and that ten bales having been so delivered and burned up, before the day of payment, the loss fell on appellant, and not on appellee.

2d. That a new agreement was made between the parties, by which appellee was authorised to deliver the cotton in parcels to the warehouse of Oglesby & Griswold, before the 25th of December, 1853, in discharge of the obligation.

Estill v. Weaver.

There being nothing objectionable in the charge of the Court, the only question which can arise is, was there sufficient evidence to support either of these defences?

To disembarrass the case, it will be necessary first to consider the last ground of defence, to-wit: whether or not there was a new contract made, as to the time and manner of delivery, different from that specified in the contract. This is dependent upon the answers of Estill, which were in evidence. They were, in substance, that Weaver said to Estill in the town of Henderson, that he was picking and packing a fine lot of cotton, and while the roads were good, would haul it to Shreveport; to which Estill answered, that he was glad that he was making preparations to pay it. At another time Weaver told Estill that he had started ten bales of cotton, to be delivered at the warehouse of Oglesby & Griswold, and that the balance would be delivered as soon as it was ready. Estill replied, as he did in the previous conversation, that all he wanted was, the cotton on the 25th December, to be ready for him; to which Weaver said it would all be ready. Estill said to Weaver that he could store it as he chose; that all he wished was, for the cotton to be paid when the note became due. Estill said further, that he may have told Weaver, when informed that the cotton was stored in his (Estill's) name, that it was all right, but denies that he accepted the cotton. It appears, in another part of the evidence, that the warehouse receipts were never given to Estill. This evidence we do not think sufficient to establish a new contract. The most pertinent part of it, tending to that result, is, that when informed that when the cotton was stored in his name, Estill says that he may have told Weaver that it was all right. He does not say that he did tell him that it was all right. But suppose he did, what does it amount to? He meant that his storing the cotton was all right, in view of the vigilant preparation which Weaver was making to discharge the obligation, on the day it fell due, as it had been spoken of before. Now, if Weaver

had satisfied Estill that the cotton was a merchantable article, and had given him over the warehouse receipt, so as to put the cotton irrevocably under the control of Estill, then it might have amounted to a delivery. But such was not the case. On Estill's part there was something still to be done. He had a right to examine the cotton, to see if it filled the contract. He had neither done this, nor waived his right to do it. Weaver still had a right to deliver to Estill the ten bales already at Shreveport, when the day of payment should arrive, or he might have carried forty more there, and delivered him his amount of cotton (20 bales) out of any of the whole lot, without respect to the first ten or twenty bales which he might have carried there. There is a plain contract in writing, binding Weaver to deliver a certain amount of cotton, at a certain day, and at a certain place. To vary the contract from those terms, it is incumbent on Weaver to show plainly that a new contract was made, and what were its terms. The evidence wholly fails to do so.

The new contract being dismissed from further consideration, did the terms of the contract, in view of the circumstances under which it was made, give Weaver a right to deliver the cotton in four, or any other number of separate parcels, to the warehouse, before the day stipulated, in discharge of his debt, and force Estill so to receive it? Here, again, there is a plain contract specifying the exact amount to be delivered, and the exact day of delivery. Now, if there were any circumstances, surrounding or attending the making of this contract, which would show that the parties did not contemplate that all of the cotton should be delivered on one and the same day, or that it was not contemplated by them, to have the contract performed on the very day which they had specified, it was incumbent on Weaver to establish those facts; and when established by proof, they should be of such forcible character, as to constrain the mind to the belief that the parties did not mean what they had themselves plainly stipulated in the writ-

ten obligation. The facts appearing out of the contract, which would, in any way, conduce to such a result, are, that Weaver made the cotton as a farmer, and would have to haul it by teams to the warehouse, and twenty bales more than a team would haul at one time. To which it may be answered, that it does not appear that Estill lived at Shreveport, or had any interest in the warehouse, from which it could be deduced that the cotton was subject to his supervision or control from the time of delivery ; there was no custom proved to perform a contract for a large lot of cotton at a day certain, by delivering parcels or loads thereof before the day ; that the warehouse was as much subject to Weaver's use as Estill's for storing the cotton, until the day of delivery ; and that the charge of storage would more properly fall on Weaver than Estill ; that Estill was not living at Shreveport, so far as the proof shows, to examine the quality and condition of the cotton, to see that it was merchantable, and might arrive in parcels ; that it was not shown that Estill occupied a position to as readily receive or use the cotton in delivered parcels, as when the whole was delivered. Under these circumstances we cannot say that the facts are presented, which constrains the mind to the belief that the parties did not mean exactly what they expressed in the contract.

The case relied on by appellee, in support of this view, is McGehee v. Hill, (1 Ala. R. 140.) There A contracted to deliver into B's boat a large amount of corn, (seven or eight hundred bushels ;) B came with his boat and A refused to deliver any of the corn, because B was not prepared to take all the corn in the boat at the same load. Upon this refusal, B brought suit, and it was held that the parties had contracted in reference to the boat, by which means the corn was to be transported, and that the refusal to deliver a part of the corn, when the whole would be more than the boat would reasonably carry, was not justified by the contract.

In that case, it entered into the contract, that the corn was

to be delivered in such quantities as could be carried in the boat of B, or in such boats as were commonly then in use for such a purpose. In the case before us it was not agreed to deliver twenty bales of. cotton into Estill's wagon; but it was to be delivered at a warehouse that would, as we may suppose, hold thousands of bales. If a farmer were to sell to a merchant one hundred thousand pounds of seed cotton, to be delivered on a certain day, to a gin in the neighborhood, then the case of McGehee v. Hill would apply. Because the gin would not, perhaps, contain that much at one time ; all the teams in the neighborhood might not be able to haul it in one day ; and all the hands in the neighborhood might not be able to move it from the wagons into the gin in one day. These circumstances constrain the mind to the belief that the parties did not intend so unreasonable a thing as the delivery of it all the same day. No such difficulties, however, attend the delivery of twenty bales of cotton, or even two hundred bales of cotton, at the warehouse of Oglesby & Griswold on the same day, as is shown by the common practice of transferring hundreds of bales of- cotton daily at the warehouses of market towns.

The object of Weaver, in taking the receipt in Estill's name, was, most probably, to transfer this cotton on the day of payment, by simply handing over the warehouse receipt to Estill, and lifting his obligation without the trouble and expense of going to Shreveport, merely to make a formal delivery of the cotton.

Another view of the case may be presented which will better illustrate the rights of the parties. When Estill demanded the cotton at Shreveport on the 25th December, 1853, suppose the ten bales not to have been burned, Weaver could not have required him to have accepted the ten bales only, under the contract. (Chaplin v. Rowley, 13 Wendell, 258; same case, 18 Wend. 187 ; Mead v. Degolger, 16 Wend. 632.) To hold the contrary of this, would force another change in the

contract contrary to its expressions, to-wit: that, although twenty bales (10,000 pounds) were contracted for, Estill shall be required to take ten only, or such other number under twenty, as Weaver may be able to get there, by the time of payment. When that was accomplished, the contract would be changed in almost every-important particular. Such radical changes, in a plain, written contract, could only be permitted on very forcible facts well established, which we do not find in this case.

We do not think, therefore, that there was sufficient evidence to support the verdict, and a new trial should have been granted, on the motion that was made by appellant.

Judgment reversed and cause remanded.

Reversed and remanded.