ZORNS et al. v. BROWNFIELD HARDWARE CO.   (No. 2005.)

(Court of Civil Appeals of Texas. Amarillo. Jan. 17, 1923. Rehearing Denied Feb. 21, 1923.)

1. Sales ⬧⟿62—Contract for agricultural machinery held indivisible.

A contract for agricultural machinery *held* indivisible, so that sellers did not put buyers in default by tender of only part of the machinery ordered, in the absence of circumstances justifying such partial tender.

2. Sales ⬧⟿92, 175—Efforts to secure countermand of order held not repudiation nor agreement for partial rescission.

Where defendant buyers sought to have their order countermanded, recognizing the binding effect of the contract, but seeking a voluntary release therefrom, this did not constitute a repudiation or breach excusing seller's failure to tender the entire amount of goods ordered; nor, since the buyers sought release from the contract as a whole, would their acts give sellers the right to hold them to part of the contract and release them as to the remainder of the contract without their consent.

3. Sales ⬧⟿38(1)—False representations a defense, although made after signature affixed.

Where contract to buy thresher and engine was signed by four buyers, false representations, inducing the signature of the buyer who first signed, were a defense to suit on the contract, where, although the representation was made after his signature was affixed, it was made at a time when the contract had not been so executed and delivered by all the buyers and accepted by the sellers as to be a binding obligation.

4. Sales ⬧⟿38(1)—Misrepresentations held defense to contract.

Where contract to buy thresher and engine was signed by four buyers, false representations that the thresher would be equipped with a belt connection with the engine, inducing the signature of the buyer who first signed, were a defense to suit on the contract, although the other buyers, later executing the contract, knew that there would be no belt provided, especially where, to induce the later signatures, it was represented that the first signers understood that there would be no belt provided, and assented to such omission.

Appeal from District Court, Terry County; W. R. Spencer, Judge.

Action by H. H. Longbrake and another, doing business as partners, under the name of the Brownfield Hardware Company, against H. C. Zorns and others. From judgment for plaintiffs, defendants appeal. Reversed and remanded.

G. E. Lockhart, of Tahoka, for appellants. Percy Spencer, of Lubbock, for appellees.

BOYCE, J. H. H. Longbrake and W. B. Downing, doing business as partners, under

the name of the Brownfield Hardware Company sued H. C. Zorns, W. L. Groves, J. M. Green, and W. C. Davis, to recover the purchase price of certain machinery ordered for the defendants, which they refused to take, and to foreclose a lien on the machinery. The defendants answered that the plaintiffs failed to comply with their contract, in that they never offered to deliver certain material parts of the machinery embraced in the order; that the machinery tendered was not fully equipped for use in accordance with the agreement; and, further, that the execution of the contract was secured by certain false representations. The appeal is from a judgment for the plaintiffs entered on verdict of the jury returned under a peremptory instruction.

On July 12, 1920, defendants signed an order directed to plaintiffs, whereby they "ordered" of the plaintiffs, to be shipped from Dallas to Brownfield, the following machinery:

"1 No. 2 Keystone thresher, equipped for peanuts and 1 grain attachment for No. 2 thresher, and also 1 9 H. P. Jacobson Portable Engine."

By the terms of the writing they agreed "upon delivery of the machines to pay the freight," and to execute and deliver two notes, each for $605.05, due October 15, 1920, and October 15, 1921, respectively, bearing interest at the rate of 8 per cent. per annum from date, and secured by mortgage on the machinery. The order provided that it was not subject to countermand. The plaintiffs did not have this machinery in stock, it being contemplated that the order would be filled by the Texas Plow Company, at Dallas. The order was on the form of the Dallas company, and was taken by G. N. Butler, agent for that company, acting in connection with plaintiff Longbrake. All of the machinery, except the grain attachment, was shipped from Dallas to Brownfield, and tendered to the defendants, who refused to pay the freight and accept the same. The plaintiffs did not have the grain attachment, and it was never shipped, though they testified that they could get it, and excused a tender of such attachment on the ground that the defendants countermanded their order for the same. The testimony shows that some time after the delivery and acceptance of the order the defendant, asked Longbrake to "try to stop it" (that is, the filling of the order by the Dallas company), and he said that he "would do the best that he could," and wired the plow company as follows:

"If you have not shipped thresher please hold a few days."

The engine and peanut thresher had already been shipped before the sending of this message. There is also some testimony

to the effect, though there is a conflict as to this, that the defendants made a separate request for the countermand of the order for the grain attachment. On the issue of false representations the 'testimony is as follows: Defendant Zorns testified that he signed the order in the presence of Longbrake and Butler, on condition that it should be signed by the other defendants; that nothing was then said about a belt, but he understood that the machinery would be fully equipped, and would include a belt connection from the engine to the thresher; that he went with Longbrake and Butler to see Groves about signing the contract; that during the conversation preceding Groves' signature he (Zorns) asked whether the thresher would have a belt; that Butler replied that "it would come fully equipped, and all there would be to do would be to put 'in the gas and oil, and it would be ready to run." Zorns further testified that he would not have signed the contract had he not understood that the machinery would be fully equipped to go to work. Green and Davis signed the contract later, not in the presence of the other two signers. Davis testified that he inquired as to whether there would be a belt, and Butler told him there would not be. Davis then inquired as to whether the other signers understood that there would be no belt provided, and Butler said that they did, and "were willing to it." Davis signed the contract under that understanding. No belt was tendered with the machinery.

[1, 2] The contract was indivisible, and the plaintiffs did not put the defendants in default by a tender of only a part of the machinery ordered, unless the act of the defendants in reference to the countermand of the order excused the plaintiffs from including the grain attachment in the tender. Estill v. Weaver, 19 Tex. 543. The effort to have the entire order countermanded would not afford such an excuse. The defendants did not breach the contract in making the effort to secure a countermand; they recognized the binding effect of the contract, but were seeking a voluntary release therefrom. If they sought release only from the contract as a whole, this would not give plaintiffs the right to hold them in part and release them in part only without their consent. There is a conflict in the evidence as to whether there was any request for countermand of the order for the grain attachment only, which, in our opinion made an issue of fact for the jury on this issue.

[3, 4] We think the evidence also made an issue of fact as to false representations inducing the execution of the contract. While the representation made by Butler to Zorns was made after Zorns' signature to the contract, it was made at a time when the contract had not been so executed and delivered by the defendants and accepted by the plaintiffs as to be a binding obligation. When Zorns signed, it was contemplated that the contract should be executed by all four defendants. Until so executed, it was not a contract, and Zorns had the right to withdraw therefrom. The representation was made at a time when the negotiations were still pending and there was no' completed contract. So that if the false representations secured Zorns' final consent to the delivery of the instrument as a completed contract, it makes no difference whether they were made before or after the act of the affixing of Zorns' signature to the instrument. If Zorns' execution of the contract was secured by false representations, it could be avoided therefor, though the others executing it knew the truth of the matter. This would be especially true, where misrepresentations as to the understanding on which those already signing the instrument had executed it were made to induce execution by the others.

Reversed and remanded.