(55 Misc. Rep. 594)

## DONCOURT v. DENTON.

(Supreme Court, Special Term, Queens County. August 6, 1907.)

1. PARTNERSHIP — WHAT CONSTITUTES — PARTNERSHIP DISTINGUISHED FROM JOINT VENTURE.

Where plaintiff's testator and defendant made an agreement to clear up land and sell timber, testator furnishing his services and defendant the money, and they were to share the profits and losses, it amounted to a partnership, and not merely to a joint venture.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Partnership, § 27.]

2. EVIDENCE—ADMISSIONS—OFFERS OF COMPROMISE.

Where there was no litigation pending or threatened at the time plaintiff's attorney wrote defendant asking for a partnership accounting between plaintiff and defendant, defendant's replies, in which he admitted his willingness to account, were not inadmissible as made in an effort to effect a compromise.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, §§ 745-750.]

3. EQUITY—LACHES—ESSENTIALS OF BAR.

While equity does not favor stale claims, it will not condemn a claim because of laches in enforcing it, where defendant has voluntarily conceded its existence.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Equity, §§ 197-203, 231.]

4. LIMITATION OF ACTIONS—NEW PROMISE—ACKNOWLEDGMENT.

Under Code Civ. Proc. § 395, in relation to limitations, providing that an acknowledgment or promise contained in a writing is the only competent evidence of a new or continuing contract whereby to take a case out of the statute, letters written by defendant to plaintiff, acknowledging that plaintiff was entitled to a partnership accounting between them, were within the statute.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Limitation of Actions, §§ 599, 600.]

Suit by Sarah P. Doncourt, as executrix of the will of one Doncourt, deceased, against Delemater S. Denton, for a partnership accounting. Judgment for an accounting.

Stanton & Hopkins (Martin W. Littleton, of counsel), for plaintiff. James P. Niemann, Edwin G. Wright, and Frederick A. Drake, for defendant

KELLY, J. The fair preponderance of the evidence establishes the fact of a partnership between plaintiff's testator and the defendant for the purpose of clearing up woodland in Hempstead and Douglaston and selling the timber. There was an agreement in writing for sharing profits and losses equally. The defendant contributed the money necessary in the first instance. Two parcels of land, the Berry and Douglas tracts, were purchased outright; title being taken in defendant's name. As to these two parcels it was provided that, after repayment of all advances made by defendant, any of the land remaining was to be divided equally between the parties. On other parcels, the Grace-Horsfield and Meakin tracts, the right to remove the timber was acquired. Two other parcels of land are involved—property purchased from John Pine and the estate of Sarah Remsen. I find that

this land was in the same category as the Grace-Horsfield and Meakin properties. The firm had the right to remove and sell the timber, but there is no evidence of any agreement by which Doncourt had any interest in the fee. This partnership arrangement was made in 1880. It provided for no definite term. The work of clearing up the land was to go on under the supervision of Doncourt. Denton was to receive all the money, pay the bills, and render statements to Doncourt at regular intervals. The return was to come from the sales of the timber. As the Berry and Douglas land was cleared, it rose in value, and Denton had the right to sell it. The final balance was to be struck when the land was sold, or when the work of clearing and the sale of the wood was finished. In any case, Denton was to get back his outlay in full, with interest. If any of the land remained, it belonged to Denton & Doncourt, share and share alike, and provision was made for a partition and the execution of deeds by Denton.

The defendant, while in court, did not take the witness stand. Of course, his testimony as to personal transactions with his deceased associate was incompetent, if the plaintiff objected to it. I do not know whether objection would have been made or not. There was nothing illegal or improper in an offer by defendant to testify, but the offer was not made. The answer is full of specific denials of facts alleged in the complaint and proved on the trial without contradiction. On the issue as to partnership, defendant in his answer, and through his counsel on the trial, repeatedly denied a partnership, asserting that the arrangement was a "joint venture." For the purposes of this action the distinction is not apparent. As Judge O'Brien says in Wilcox v. Pratt, 125 N. Y. 688, 25 N. E. 1091:

"It is not necessary to inquire whether there was a partnership between the parties in the technical legal sense of that term. Whether it was a partnership or a joint enterprise, the contract is to be enforced and the rights and liabilities of the parties determined upon the same principles as are applied by courts of equity to partnership transactions. King v. Barnes, 109 N. Y. 267, 16 N. E. 332."

The relationship had all the indicia of partnership. There was the use of a firm name, and printed letter heads and bill heads in the firm name "Denton & Doncourt," with the names of the parties underneath. There was a joint enterprise, with a provision for sharing the profits and losses; one man contributing the money, the other his experience and labor. Such contracts are not unusual, and it is difficult to see where any of the essentials of a partnership was lacking.

The actual work in the field went on from 1880 to 1885, or thereabouts. By that time a large part of the land had been cleared up. Denton supplied the money. Doncourt superintended the work. Denton made statements from time to time. He pleads a settlement in 1885, and payment of a lump sum of $3,026.46 to Doncourt in full settlement of all his claims, and alleges that it was then agreed that the joint venture should be abandoned and that the relations of the parties should be at an end. But there was no proof of any such settlement. On the contrary, it is shown that the relationship continued, and writings by the defendant are in evidence inconsistent with this allegation in his answer.

It is alleged that there was an account stated in January, 1891, and that Doncourt then abandoned the agreement. This, it will be observed, is inconsistent with the last preceding defense. One or the other must be untrue. If Doncourt abandoned the contract and surrendered all his rights on payment of the $3,026.46 in July, 1885, there was no necessity of a further abandonment six years later. The evidence in support of the alleged settlement on account stated in 1891 comes from the wife and daughter of defendant. Without criticising either witness, and having in mind the lapse of time, the infirmities of memory, and the natural feeling of a wife and daughter, it is sufficient to say that the testimony is not sufficient to warrant a finding in defendant's favor. I have given the evidence of these two ladies careful attention, and I have examined the statement in lead pencil involving so many years' dealings and exhibiting a debit balance of some $18,000. I do not think that Doncourt ever intended to abrogate the partnership and surrender all his rights on the brief examination which he must have necessarily made of this paper, then exhibited to him for the first time. I think the testimony is consistent with a statement by Doncourt that he would abandon present demands for payment or sale of the property remaining, leaving it to Denton to work it out and sell the land remaining, but of which the profits, if any, must come, in his own good time. I do not think a partnership which had existed for '11 years was wiped out in any such summary fashion.

But the strongest proof against defendant's claim is found in his own handwriting. On July 15, 1892 (Plaintiff's Exhibit 31), Denton wrote a letter to Doncourt concerning some work of sawing timber on the land at Douglaston, and stating that he (Denton) had made an agreement with one Southard to do the work, "we to pull his engine and boiler from Douglaston depot to the woods, he to load and unload same, we to pay him three-fourths of a cent per foot for sawing any and all material that we might want to have done. This is better than we could do with Callister, as he would only pay $40 for the mill." It is impossible to read this letter and believe the allegation in the answer that all relationship of the parties had terminated in 1891.

Again, we find the strongest contradiction of defendant in his own letters written to the attorney, Brainerd, who had correspondence with him in 1895 and 1899, relative to an accounting between Doncourt and defendant. There was vigorous opposition to the introduction of this correspondence on the trial; defendant insisting on the application of the rule that writings or statements made in the effort to compromise or adjust a dispute must not be taken against a party who is endeavoring to "buy his peace." I thought at the trial that the correspondence was admissible, but at defendant's insistence took the matter under advisement. To save his rights, I now admit this correspondence, noting an exception to the defendant, because, in my opinion, this correspondence does not come within the class excluded, for the reasons referred to. There was no litigation pending or threatened when attorney Brainerd wrote to Denton. He asked for an accounting. Denton promptly answered, admitting his willingness to account, and his willingness to convey half the property to Doncourt on receiving

the amount which he insisted was due him.    These letters and the subsequent correspondence running into 1899, down to the letter in August of the latter year in which defendant writes, "Doncourt has not one dollar equity in it," are, it seems to me, all admissible, and are almost conclusive on the existence of an unsettled account between the parties. Of course, statements made in an effort to compromise a dispute would not be admitted.    But the difference is that here there was no dispute by Mr. Denton as to Doncourt's right to an accounting.    The distinction is pointed out by Mr. Justice Jenks, writing in Collins v. McGuire, 76 App. Div. 443, at page 445, 78 N. Y. Supp. 527; and in the able brief submitted by the learned counsel for defendant this distinction is emphasized in several of his citations.    Thus in Marvin v. Richmond, 3 Denio, 58, cited by defendant, Judge Beardsley says:

"The evidence was competent against the plaintiff.    It was not an offer for a compromise, but an unqualified admission of a fact."

To the same effect are Mead v. Degolyer, 16 Wend. 632; White v. O. D. S. S. Co., 102 N. Y. 660, 6 N. E. 289.

If the partnership between plaintiff's testator and the defendant had been terminated and their affairs wound up in 1891, it is inconceivable that Mr. Denton would have written these letters in 1898 and 1899. By these letters, without any threat of suit, without any necessity for "buying his peace," he voluntarily admitted the existence of rights in Doncourt's favor, and his entire willingness to account and adjust matters, and to convey to plaintiff's testator his share in the land.    These letters, to my mind, completely negative defendant's claim of settlement and account stated in 1885 or 1891, as well as the claimed effect of the evidence of Mrs. Denton and her daughter.    The statements naturally made by Doncourt to pursuing creditors and the sheriff's officer cannot defeat plaintiff's claim, against the agreements in writing for the partnership and these written admissions by defendant.    The declaration made by Doncourt to an intending purchaser of some of the land that he was not interested in it, or that the purchaser must apply to Denton, are explained from the very nature of the agreement with Denton, and from the fact, which I have already alluded to, that it may well be that in 1891 Doncourt agreed that Denton should take his own time to sell the property when it was to the best advantage to do so.

In addition to the effect of these voluntary unsolicited statements in writing by the defendant on the right of plaintiff to an accounting, they have the additional effect of disposing of the defense of the statute of limitations, if that defense was available in any case.    I think the 10-year statute applies to these transactions.    But plaintiff contends, with some force, that in no case would the statute begin to run until the defendant had sold the property, because, under the agreement, he had the right to do this, and to select the time for doing it, and that he cannot use Doncourt's complaisance in agreeing with him to wait for a good market against the plaintiff.    Gilmore v. Ham, 142 N. Y. 1, 36 N. E. 826, 40 Am. St. Rep. 554; Gray v. Green, 142 N. Y. 316, 37 N. E. 124, 40 Am. St. Rep. 596.    But, however this may be, I think Mr. Denton's letters in 1899 relieve the plaintiff's case from the

statutory bar. Courts of justice do not strain after arguments to support a defense of the statute of limitations. Granted the existence of a lawful claim, the statute does not discharge the moral obligation, while it may defeat the remedy. Therefore these letters acknowledging the continuing obligation are, it seems to me, a compliance with Code Civ. Proc. § 395; "A promise to pay is not necessary—Henry v. Root, 33 N. Y. 525–530; Kahn v. Crawford, 28 Misc. Rep. 572, 59 N. Y. Supp. 853. It is essential that the writing, either in precise terms, or fairly construed, disclose a purpose to recognize the claim as an obligation." Fletcher v. Daniels, 52 App. Div. 67, 64 N. Y. Supp. 861. I do not say that Denton admits that he owes Doncourt any money, but I think the letters clearly admit Doncourt's existing right to an accounting and to a transfer of one-half of any real estate undisposed of, upon payment of his share of any balance found due. And while, irrespective of the statute, equity does not favor stale claims, a court of equity cannot condemn a claim because of laches in enforcing it, where the defendant voluntarily concedes its existence.

If Mr. Denton owes his dead partner nothing, he can establish it. He has the books and accounts, and has had the financial management of the affairs from the outset. It may be that he is right in his statement that Doncourt has no "equity" in the property; but it should be more satisfactory to him to show it in the fair and honest way which he voluntarily proposed to Brainerd in 1898, than to defeat the claim of Doncourt's executor on a plea of the statute of limitations, or on the evidence of his wife and daughter as casual listeners to part of a conversation 16 years ago. Mr. Denton's method of daily business, as indicated in the agreements drawn in his own handwriting and his accounts and statements in evidence, impresses me with the belief that, if he had intended that Doncourt should surrender all interest in the property, he would have prepared some memorandum in writing to that effect and would never have left it open to dispute. And in such case he never would have written the letters to Doncourt in 1892 and to Brainerd in 1898 and 1899.

There must be an interlocutory judgment for the plaintiff for an accounting. Submit requests to find at courthouse, Brooklyn, on or before September 1, 1907.